UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRETT GREEN and LANNY
WHITSON, individually and
on behalf of all others
similarly situated,

    Plaintiffs,

v.                        CASE NO: 8:09-cv-445-T-33TBM

FEDEX NATIONAL, LTL, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court for consideration of Defendant FedEx National, LTL, Inc.'s Motion to Dismiss and Motion to Strike (Doc. # 9). Plaintiffs Brett Green and Lanny Whitson filed a Response in Opposition thereto (Doc. # 16). For the reasons below, the motions are denied.

**I. Background**

In 2006, FedEx took control of Watkins Motor Lines, and Plaintiffs, small business truck owner/operators, entered into an agreement with FedEx to provide shipping services according to certain terms contained in an Equipment Lease and Operating Contract, a form copy of which is attached to the Complaint as Exhibit A (the "Contract"). The Contract, drafted by FedEx, describes the manner in which FedEx, the "CARRIER," would

lease, on an as-needed basis, transportation equipment from the individual truck owners, or "CONTRACTOR," and the truck owner would provide transportation services. Under this arrangement, the truck owner would lease its truck to FedEx and provide drivers and other necessary labor to transport, load and unload "such commodities as CARRIER may from time to time make available to CONTRACTOR." (Contr. ¶ 2). Payment was based on the "full and proper performance of each trip." (Contr. ¶ 4). The Contract further specifies that:

> [T]his shall not be construed as an agreement by CARRIER to furnish any specific number or types of loads or units, pounds, gallons or any other measurements of weight or volume, quantity, kind or amount of freight, for transport by CONTRACTOR at any particular time or place.

(Contr. ¶ 2). Further, the Contract, in a paragraph titled "CONTRACTOR'S DISCRETION," states "As an independent contractor, CONTRACTOR is free to accept or reject assignments from CARRIER." (Contr. ¶ 3). In addition, each truck owner continued to "have the right to perform transportation services for other carriers when not providing such services to CARRIER." (Contr. ¶ 6(e)). Paragraph 6(e), however, goes on to provide that:

> In the event CONTRACTOR intends to use Equipment in any non-Carrier use, including trip leasing, CONTRACTOR shall, prior to any such use, on each occasion (1) provide prior written notice to

> CARRIER of CONTRACTOR's intent to provide such services to another carrier; (2) verify that applicable liability coverage and cargo insurance of such other carrier is in effect to cover operation of CONTRACTOR while providing transportation services to such other carrier; and (3) remove or fully cover all of CARRIER's identification signs, placards, permit markings and other identifying marks.

(Contr. ¶ 6(e)). The Contract further requires all written notices made pursuant to the Contract (including written notices of a Contractor's intent to provide service to another carrier) to be delivered in person, or by U.S. certified mail return receipt requested, or, sent by FedEx Express service. (Contr. ¶ 15(c)).

Under the Contract, Plaintiffs were required to pay to FedEx $50.00 per week, per truck, every week until FedEx had collected $700.00 per truck in an escrow security fund that FedEx controlled. (Contr. ¶ 7). In addition, Plaintiffs promised to maintain and to wear FedEx uniforms and photo badges; to maintain their trucks with FedEx signage and permits; and to maintain FedEx monitoring equipment. (Contr. ¶¶ 12,14; see also ¶ 18(f)). These items remained the property of FedEx and had to be returned to FedEx at termination. (Contr. ¶ 7(d)). The Contract provided that certain terms would survive the termination of the Contract so that FedEx would be protected from responsibility for trucker

3

incurred costs and damages. (Contr. ¶¶ 4(g), 15(b)).

Finally, the Contract's initial term ran through July 31, 2007, with automatic renewal for successive annual terms. The Contract, however, allowed either party to terminate without cause upon 30 days' written notice. (Contr. ¶ 15(a)).

This action arises from FedEx's alleged termination of the Contracts without such notice. Count I is a claim for breach of contract for failure to abide by the 30-day notice requirement. Count II alleges a violation of the implied duty of good faith and fair dealing. Finally, Count III asserts a claim for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

FedEx (hereinafter "Defendant") now moves to dismiss Counts I, II and III and to strike the claims for attorney's fees in Counts I and II.

## II. **Standard of Review**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).

4

The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hosp. Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986). All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### III. Analysis

#### A. Count I - Breach of Contract

Defendant submits that Plaintiffs' claim for breach of contract is based on Defendant's breach of its "promise" to use the services of Plaintiffs and the other putative class

members until the expiration of any 30-day notice period. Defendant argues that the failure to fulfill this "promise" is not a breach of contract because the "promise" is not supported by consideration. Defendant states that its "promise" to use Plaintiffs "from time to time," without specifying how often or to what extent it might use them, is an illusory promise that cannot be enforced. Defendant argues that "[a]t best, the contract provides the terms and provisions the parties would use should (1) FedEx offer – as it stated it would 'from time to time' - to use the truck owner's services and (2) the truck owner accept, given its discretion to refuse any assignment that was offered. The mutual illusory promises do not bind either party to do anything, which is insufficient consideration to create an enforceable contract." Defendant's Motion to Dismiss (Doc. # 9 at pp. 7-8).

Defendant cites to Office Pavilion South Florida, Inc. v. ASAL Products, Inc., 849 So.2d 367,370 (Fla. 4th DCA 2003), Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1311 (11th Cir. 1998), and Petroleum Traders Corp. v. Hillsborough County, 2008 WL 4570318, at *4 (M.D. Fla. Oct. 14, 2008), in support of the assertion that a promise must be supported by consideration to be enforceable.

6

This Court agrees with this proposition of law. It finds, however, that the Plaintiffs have adequately alleged consideration for purposes of surviving a motion to dismiss.

Plaintiffs point out that, unlike the facts of the cases cited by Defendant, Plaintiffs were required by the Contract to style their equipment in the trade dress of the Defendant, to wear Defendant's uniforms, to incorporate the Defendant's equipment into its own, to pay into an escrow fund and to comply with numerous terms before taking work from another carrier. The business relationship between Plaintiffs and Defendant was a more complex business relationship than the arms-length business relationships found in the cases cited by Defendant.

Florida law recognizes that forms of consideration other than the exchange of money are "'sufficient [when] something of value flows from the person to whom [the promise] is made, or that he suffers some prejudice or inconvenience and that the promise is the inducement to the transaction.'" <u>Real Estate World Florida Commercial, Inc. v. Piement, Inc.</u>, 920 So.2d 704, 706 (Fla. 4th DCA 2006)(quoting <u>Lake Sarasota, Inc. v. Pan Am. Sur. Co.</u>, 140 So.2d 139, 142 (Fla. 2d DCA 1962)). Plaintiffs argue that they paid Defendant for the privilege of being in a contract with Defendant in the form of the escrow

7

requirement. Defendant received the value of a work force of truckers in an "at the ready" condition. Plaintiffs further assert that they suffered prejudice and inconvenience from the restrictions in place impeding the ability to work for other carriers and the host of other obligations to Defendant under the Contract. Based on the foregoing, this Court cannot find at this stage of the proceedings that the Contract is unenforceable due to a lack of consideration. Accordingly, the motion to dismiss Count I is denied.

**B. Count II - Breach of Implied Duty of Good Faith and Fair Dealing**

Under Florida law, an implied covenant of good faith and fair dealing exists in every contract. Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999). It is an interpreting, gap-filling tool of contract law that must relate to the performance of an express term of the contract. Shibata v. Lim, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000). The covenant applies when the propriety of the conduct in question is not resolved by the terms of the contract. Id.

> That situation ordinarily arises when: 1.) the contract is ambiguous about the permissibility of the conduct, or 2.) when the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated. When, however, the express terms of the contract determine the permissibility of the conduct, no

8

> gap-filler is needed and the covenant does not apply.

Id. at 1318-19 (citations omitted).

> [A] breach of implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract. Thus, a party can maintain a claim for breach of the implied duty only if it is based on allegations different than those underlying the accompanying breach of contract claim.

Id. at 1319 (citations omitted).

Defendant argues that Count II of Plaintiffs' Complaint is simply based on the breach of an express term of the Contract and no gap-filling is necessary. Defendant contends that the same allegations used to support the breach of contract claim, i.e., the termination of the Contract without 30 days' written notice, are used to support the breach of the implied duty of good faith and fair dealing claim. Accordingly, Defendant moves to dismiss Count II.

Plaintiffs argue that the express term of the Contract to which this claim relates is, in fact, the 30-day written notice requirement, but that the claim is further tied to the Contract's term of duration until July 31, 2007, and the automatic renewal clause, which create an ambiguity over the expectation Plaintiffs had for the long-term business relationship they contend they went to considerable expense to

maintain. They further assert that there is a dispute over the discretion of the "as needed" and "accept or reject" language in the context of the Contract and the performance of the Contract. Accordingly, Plaintiffs argue, the express terms of the Contract do not, by themselves, determine the permissibility of Defendant's conduct.

The Court finds that Count II relates to the performance of an express term of the Contract, but is not duplicative of Plaintiffs' breach of contract claim. Count II is based on additional allegations to those found in Count I and encompasses additional terms of the Contract, not just the 30-day notice provision. The Court agrees with Plaintiffs' characterization that "Count I is squarely aimed at the 30 day notice provision, and Count II is aimed at the spirit of the bargain, the expectations of the Parties, and the performance of the Parties under the Contract." Plaintiffs' Response in Opposition (Doc. # 16 at p. 12). Accordingly, the motion to dismiss Count II is denied.

**C. Count III - FDUTPA**

FDUTPA provides protection from "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1) (2008). To state a claim

10

for damages under the FDUTPA, a plaintiff must allege facts showing "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006). A deceptive act is one that is "likely to mislead" consumers, whereas an unfair act is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Id. Allegations are sufficient when they go beyond intentional breach of contract claims and are not merely conclusory. HW Aviation LLC v. Royal Sons, LLC, 2008 WL 4327296, at *5-6 (M.D. Fla. Sept. 17, 2008).

Defendant argues that a mere breach of contract claim, without allegations of a deceptive or unfair practice or act, does not rise to the level of a FDUTPA claim. Defendant contends that Plaintiffs do not allege deceptive or unfair practices or acts on the part of the Defendant.

Plaintiffs argue that they have alleged that Defendant's conduct was both deceptive and unfair. Specifically, Plaintiffs point to the allegation in the Complaint that Defendant's conduct was a "complete sham" because it did not breach one or two Contracts at different times, but instead it simultaneously breached all of the Contracts with Plaintiffs and the other potential class members. Plaintiffs argue that

11

this course of conduct is inherently unfair and/or deceptive especially given the entirety of Plaintiffs' common allegations that Defendant had simultaneously imposed the Contract on all the truckers with the expectation of a long-term business relationship. Plaintiffs assert that this alleged conduct warrants its FDUTPA claim and an opportunity for discovery into Defendant's conduct and intentions related to these Contracts. This Court agrees and finds that Plaintiffs' allegations are sufficient to survive a motion to dismiss.[1]

Defendant argues, in the alternative, that Count III should be dismissed for failure to allege a basis for recovery under the FDUTPA. The FDUTPA allows for declaratory and injunctive relief as well as recovery of "actual damages, plus attorney's fees and court costs." FLA. STAT. § 501.211 (1) & (2) (2008). Specifically, Defendant contends that the damages Plaintiffs seek are not "actual damages" as required under the statute, and Plaintiffs have not pled facts entitling them to injunctive relief. The Court, however, cannot determine at this stage of the proceedings that Plaintiffs are barred from

---

[1] The Court finds the Defendant's argument that Plaintiffs' claim fails to adhere to the pleading requirements of Rule 9(b) to be without merit because Plaintiffs have not alleged fraud in the Complaint.

the relief alleged in the Complaint. Accordingly, the Court cannot dismiss Count III on this basis.

**D. Attorney's Fees**

Attorney's fees may be awarded in certified class actions when they are authorized by law or an agreement between the parties. Fed. R. Civ. P. 23(h). Defendant moves to strike the claims for attorney's fees in Counts I and II because they are not authorized by any law or agreement. Plaintiffs contend that the attorney's fees are authorized by the Contract between the parties.

The parties agree that the Contract expressly awards attorney's fees to the prevailing party in arbitration. (Contr. ¶ 18(e)). Defendant interprets the Contract to provide no other basis for an award of attorney's fees. Plaintiffs, on the other hand, point out that another provision in the Contract holds Plaintiffs liable for any attorney's fees and court costs related to actions on the termination of the Contract. (Contr. ¶ 15(b)). Plaintiffs argue that the "court costs" discussed in ¶ 15(b) are not arbitration costs; therefore, Defendant clearly contemplated in the Contract the possibility of judicial resolution in addition to arbitration and included a basis for recovery of attorney's fees in the event of judicial resolution as well as

arbitration. Plaintiffs submit that it would be premature to bar attorney's fees until the Contract can be properly interpreted during the course of the proceedings.

Although, initially, Plaintiffs' interpretation of the Contract to include an award of attorney's fees for judicial resolutions seems tenuous, this Court agrees that it would be premature to strike the claims for attorney's fees until the Court can consider the issue of contract interpretation at a later stage of the proceedings. Accordingly, Defendant's Motion to Strike is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion to Dismiss and Motion to Strike (Doc. # 9) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>8th</u> day of September, 2009.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

14