```
                 UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
                        TAMPA DIVISION
```

BRETT GREEN and LANNY
WHITSON, individually and
on behalf of all others
similarly situated,

       Plaintiffs,

v.                             CASE NO:   8:09-cv-445-T-33TBM

FEDEX NATIONAL, LTL, INC.,

       Defendant.
_____/

**ORDER**

This cause comes before the Court for consideration of Plaintiffs Brett Green and Lanny Whitson's Motion for Class Certification (Doc. # 46).  Defendant FedEx National, LTL, Inc. filed a Memorandum of Law in Opposition thereto (Doc. # 50).  Plaintiffs, with leave of Court, filed a Reply (Doc. # 53).  For the reasons below, the motion is denied.

**I.   Background**

In 2006, FedEx took control of Watkins Motor Lines, and Plaintiffs, small business truck owner/operators, entered into an agreement with FedEx to provide shipping services according to certain terms contained in an Equipment Lease and Operating Contract, a form copy of which is attached to the Complaint as Exhibit A (the "Contract").  The Contract, drafted by FedEx,

describes the manner in which FedEx, the "CARRIER," would lease, on an as-needed basis, transportation equipment from the individual truck owners, or "CONTRACTOR," and the truck owner would provide transportation services. Under this arrangement, the truck owner would lease its truck to FedEx and provide drivers and other necessary labor to transport, load and unload "such commodities as CARRIER may from time to time make available to CONTRACTOR." (Contr. ¶ 2). Payment was based on the "full and proper performance of each trip." (Contr. ¶ 4). The Contract further specifies that:

> [T]his shall not be construed as an agreement by CARRIER to furnish any specific number or types of loads or units, pounds, gallons or any other measurements of weight or volume, quantity, kind or amount of freight, for transport by CONTRACTOR at any particular time or place.

(Contr. ¶ 2). Further, the Contract, in a paragraph titled "CONTRACTOR'S DISCRETION," states "As an independent contractor, CONTRACTOR is free to accept or reject assignments from CARRIER." (Contr. ¶ 3). In addition, each truck owner continued to "have the right to perform transportation services for other carriers when not providing such services to CARRIER." (Contr. ¶ 6(e)). Paragraph 6(e), however, goes on to provide that:

> In the event CONTRACTOR intends to use Equipment in any non-Carrier use, including trip leasing,

2

> CONTRACTOR shall, prior to any such use, on each occasion (1) provide prior written notice to CARRIER of CONTRACTOR's intent to provide such services to another carrier; (2) verify that applicable liability coverage and cargo insurance of such other carrier is in effect to cover operation of CONTRACTOR while providing transportation services to such other carrier; and (3) remove or fully cover all of CARRIER's identification signs, placards, permit markings and other identifying marks.

(Contr. ¶ 6(e)). The Contract further requires all written notices made pursuant to the Contract (including written notices of a Contractor's intent to provide service to another carrier) to be delivered in person, or by U.S. certified mail return receipt requested, or, sent by FedEx Express service. (Contr. ¶ 15(c)).

Under the Contract, Plaintiffs were required to pay to FedEx $50.00 per week, per truck, every week until FedEx had collected $700.00 per truck in an escrow security fund that FedEx controlled. (Contr. ¶ 7). In addition, Plaintiffs promised to maintain and to wear FedEx uniforms and photo badges; to maintain their trucks with FedEx signage and permits; and to maintain FedEx monitoring equipment. (Contr. ¶¶ 12,14; see also ¶ 18(f)). These items remained the property of FedEx and had to be returned to FedEx at termination. (Contr. ¶ 7(d)). The Contract provided that certain terms would survive the termination of the Contract so

3

that FedEx would be protected from responsibility for trucker incurred costs and damages. (Contr. ¶¶ 4(g), 15(b)).

Finally, the Contract's initial term ran through July 31, 2007, with automatic renewal for successive annual terms. The Contract, however, allowed either party to terminate without cause upon 30 days' written notice. (Contr. ¶ 15(a)).

This action arises from FedEx's alleged termination of the Contracts without such notice. Count I is a claim for breach of contract for failure to abide by the 30-day notice requirement. Count II alleges a violation of the implied duty of good faith and fair dealing. Finally, Count III asserts a claim for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Plaintiffs now move this Court to order pursuant to Federal Rule of Civil Procedure 23 and Local Rule 4.04 that this action may properly proceed as a class action with Plaintiffs representing all persons defined as follows:

> All persons and entities throughout the United States operating as independent contractors (ICs) with Equipment Lease and Operating Contracts (ELOCs) who contracted to carry freight for FedEx National LTL, Inc. (FedEx) and whose ELOCs were terminated by FedEx without 30 days' written notice.

II. **Standard of Review**

A district court has broad discretion in determining

4

whether to certify a class. <u>Washington v. Brown & Williamson Tobacco Corp.</u>, 959 F.2d 1566, 1569 (11th Cir. 1992); <u>Griffin v. Carlin</u>, 755 F.2d 1516, 1531 (11th Cir. 1985). Federal Rule of Civil Procedure 23(a) lists the prerequisites to a class action as:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party requesting class certification bears the burden of proving that each of these prerequisites has been met. <u>Gilchrist v. Bolger</u>, 733 F.2d 1551, 1556 (11th Cir. 1984). In addition to satisfying each prerequisite, the party must also prove that the proposed class properly falls into one of the subsections of Federal Rule of Civil Procedure 23(b). <u>Alabama v. Blue Bird Body Co.</u>, 573 F.2d 309, 315 (5th Cir. 1978).

**III. Analysis**

    **A. Rule 23(a) Requirements**

Plaintiffs have established sufficient facts to meet the numerosity, commonality and adequate representation

requirements.  However, Plaintiffs fail to meet the typicality requirement.  Therefore, class certification must be denied.

The numerosity requirement focuses on whether joinder of all proposed class members would be impracticable. Armstead v. Pingree, 629 F. Supp. 273, 279 (M.D. Fla. 1986). There is no magic number of class members that qualifies an action for certification. See Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968) (certifying a class action with twenty-five members); but cf. Utah v. American Pipe & Constr. Co., 49 F.R.D. 17 (C.D. Cal. 1969) (refusing to certify a class action with 350 members).  Plaintiffs have the burden to show that joinder is impracticable.

Plaintiffs submit that, based on the discovery produced by FedEx, they can identify at least 243 Contractors that are class members.  FedEx agrees that a class of 243 members clearly meets numerosity requirements, but argues that many of the 243 potential class members identified by Plaintiffs were not "terminated" by FedEx and are not, therefore, part of the proposed class as defined by Plaintiffs.  The Court finds FedEx's argument to be without merit. Although some of the 243 potential class members identified by Plaintiffs may ultimately not meet the class definition, the showing by Plaintiff is sufficient to meet the numerosity requirement.

6

The commonality requirement examines whether the case presents questions of law or fact common to all proposed class members. <u>Armstead</u>, 629 F. Supp. at 279.  Commonality does not require complete identity of legal claims. <u>Johnson v. American Credit Co.</u>, 581 F.2d 526, 532 (5th Cir. 1978).  Commonality can be satisfied even with some factual variations in the class members' claims. <u>Armstead</u>, 629 F. Supp. at 280.  Here, there are common issues of law including, but not limited to, whether FedEx entered into a viable, legal contract with the Contractor class members, whether the Contracts required FedEx to provide 30-days' written notice and whether FedEx's termination of the Contracts constituted a breach of the 30 day notification of termination provision in the Contract.  These legal questions are sufficient to satisfy the commonality requirement.  Therefore, Plaintiffs' proposed class meets this prerequisite.

The typicality requirement analyzes whether the named plaintiff's claim is typical of the claims of the rest of the class.  A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984).  When the named plaintiff's injury is different from that of the rest of

7

the class, his claim is not typical and he cannot serve as the class representative. General Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982); Griffin v. Dugger, 823 F.2d 1476, 1482-83 (11th Cir. 1987). Further, when proof of the named plaintiff's claim would not necessarily prove the claims of the proposed class members, the named plaintiff does not satisfy the typicality requirement. Falcon, 457 U.S. 147; Brooks v. Southern Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990).

 FedEx argues that Plaintiffs' claims are not typical because they do not arise from the same event or practice or course of conduct, i.e., each and every purported "termination" or alleged breach of contract could have occurred in a different manner, as the communications regarding "termination" or not offering more loads were made orally and in separate conversations.  See Doc. # 50, Thompson Aff. ¶ 3.

 Further, FedEx submits that the Plaintiffs' individual communications with FedEx are pivotal because the fact finder will need to evaluate the facts and circumstances of each communication to determine whether in fact there was a "termination" of the Contract without notice, whether each Contractor was simply told they were not going to receive loads consistent with the terms of the Contract, or whether some other communication occurred regarding future receipt of loads to

8

haul.  FedEx points to the fact that each Contractor's actions after these discussions will need to be evaluated to determine whether the Contractors themselves initiated the termination of the Contract.

Here, Plaintiff Green seeks to represent a class of Contractors whose Contracts were terminated by FedEx without 30 days' notice. However, Plaintiff Green admits that he was told his Contract was not being terminated, but that he would not be receiving any loads, at least in the short term, and that he could continue to operate under the terms of the Contract by leaving his trucks on the property and continuing to pay into the escrow fund.  Green then found new work and turned in his FedEx materials.  As such, Green may have a different injury from those class members who seek to prove that their Contract was never terminated and they never initiated any actions to "terminate" the Contract.  Accordingly, proof of Green's claim would not necessarily be the same as the claims of the rest of the class members.

Typicality may be destroyed by the existence of unique defenses that would preoccupy the named plaintiff to the detriment of the interests of absent class members. See Ross v. Bank South, N.A., 837 F.2d 980, 990-91, vacated on other grounds, 848 F.2d 1132, 1133 (11th Cir. 1988); see also O'Neill

9

v. The Home Depot U.S.A., Inc., 243 F.R.D. 469, 478 (S.D. Fla. 2006). FedEx argues that Green's conduct of finding new work and, on his own initiative, turning in his FedEx materials indicates it is he who terminated the Contract, which makes the defenses of waiver and estoppel applicable. This Court agrees that the availability of these defenses to FedEx defeats typicality in this case. As Plaintiffs fail to meet the typicality requirement, the motion must be denied.

The final requirement for class certification is adequate representation. This requirement has two components: whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and whether the named plaintiffs have interests antagonistic to those of the rest of the class. Griffin v. Carlin, 755 F. 2d at 1533; Warren v. City of Tampa, 693 F. Supp. 1051, 1061 (M.D. Fla. 1988). Here, FedEx does not contest the qualifications of Plaintiffs' counsel, and there is no indication that Plaintiffs' interests, other than those specific to Green discussed above, are antagonistic to those of the rest of the class members. Therefore, Plaintiffs have satisfied this prerequisite.

Because Plaintiffs fail to meet the typicality requirement of Rule 23(a), Plaintiffs' motion for class certification is denied.

10

**B. Rule 23(b) Requirements**

Even if Plaintiffs were able to meet the typicality requirement, their motion would still be denied because they do not meet the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the plaintiff must show that common questions of law or fact predominate over the questions affecting individual class members. In addition, the plaintiff must show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); Blue Bird Body Co., 573 F.2d at 315. For common issues to predominate, the plaintiff must demonstrate that the issues are subject to generalized proof on a class-wide basis and that common questions predominate over questions subject to individualized proof. See, e.g., Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000).

In this case, common issues of law and fact do not predominate. The record evidence establishes that members of the proposed class were notified orally that there would be no more loads. It is foreseeable that in determining whether FedEx's conduct constitutes breach of the Contract, each Contractor's conduct in terms of ending their relationship with FedEx would have to be examined. Each Contractor would have to prove the elements of his case, including whether FedEx's

11

conduct amounted to a breach, whether the breach was material, whether the breach caused damages, and the amount of each individual's damages. See Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1274 (11th Cir. 2009); Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009); Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc., No. 8:08-cv-1931-T-30TBM, 2009 WL 928321, at *6 (M.D. Fla. Apr. 3, 2009)("Courts have repeatedly held that breach of contract claims are inappropriate for class certification where, as here, they involve individualized inquiries to determine liability and damages"). Accordingly, common issues of law and fact do not predominate.

In addition, Plaintiffs have argued that the "course of dealing" altered the Contract to require FedEx to continue to supply loads of the same size and frequency it had previously supplied. This, too, would require the Court to review the course of dealing as to each individual Contractor and, for Contractors with more than one truck, each truck. See Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co., 95 F.R.D. 168, 178 (D. Del. 1982)(denying class certification despite contracts being identical in material parts because myriad of contract issues lurked in the lawsuit; in particular, course of dealing would be relevant to construing contract language).

12

Likewise, as discussed above, FedEx has raised substantial affirmative defenses of waiver and estoppel.

> Even the most common contractual questions - those arising, for example, from the alleged breach of a form contract - do not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements. The risk of voluminous and individualized extrinsic proof runs particularly high where a defendant raises substantial affirmative defenses to breach.

<u>Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Serv., Inc.</u>, 601 F.3d 1159, 1176-77 (11th Cir. 2010).

For these reasons, Plaintiffs' proposed class fails to satisfy the Rule 23(b) requirement that common issues of law and fact predominate, and their motion for class certification is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs' Motion for Class Certification (Doc. # 46) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>29th</u> day of March, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

13

Copies:

All Counsel of Record