UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRITT GREEN TRUCKING, INC.
and LANNY D. WHITSON,
individually and on behalf
of all others similarly
situated,

   Plaintiffs,

v.           Case No. 8:09-cv-445-T-33TBM

FEDEX NATIONAL, LTL, INC.,

   Defendant.
_____/

## ORDER

 This cause comes before the Court for consideration of
Plaintiffs Britt Green Trucking, Inc. and Lanny D.
Whitson's ("Plaintiffs") Motion for Class Certification
(Doc. # 134) filed on July 15, 2013. Defendant FedEx
National, LTL, Inc. ("FedEx") filed a response in
opposition (Doc. # 137) on August 1, 2013. On August 14,
2013, Plaintiffs filed a reply memorandum in support of
their Motion. (Doc. # 140).

 On October 21, 2013, Plaintiffs filed a supplemental
memorandum in support of their Motion. (Doc. # 146).
Thereafter, FedEx filed a response in opposition to
Plaintiffs' supplemental memorandum on October 25, 2013.
(Doc. # 149).  Finally, on November 1, 2013, Plaintiffs

filed a reply in response to FedEx's response in opposition to Plaintiffs' supplemental memorandum. (Doc. # 152). Upon due consideration and for the reasons set forth below, Plaintiffs' Motion for Class Certification is denied.

## I.   <u>Factual Background</u>

In August of 2006, FedEx took control of Watkins Motor Lines, an interstate motor carrier based in Lakeland, Florida, which employed individuals and trucking companies as independent contractors ("ICs"). (Doc. ## 48 at ¶¶ 9-10; 134 at 4; 137 at 2). On the date of the Watkins acquisition, FedEx entered into Equipment Lease and Operating Contracts ("ELOCs") with ICs, including Plaintiffs, in various locations throughout the United States. (Doc. ## 48 at ¶¶ 11-12; 134 at 4; 137 at 3).

The ELOCs utilized by FedEx described both the manner in which FedEx would lease transportation equipment from ICs and the manner in which ICs would provide transportation services. (<u>See</u> Doc. # 48, Ex. A). The ELOCs provided as follows:

> [FedEx] desires to lease, on an as-needed basis, transportation equipment it does not own from [IC] and desires that [IC] provide transportation services, as needed, for the transportation of certain commodities provided by [FedEx] or its

> customers; and [IC] desires to contract with
> [FedEx] to transport such commodities.

(Id. at 1).  The ELOCs further stated:

> [FedEx] agrees to make commodities available to
> [IC] for shipment, from time to time, although
> this shall not be construed as an agreement by
> [FedEx] to furnish any specific number or types
> of loads or units, pounds, gallons, or any other
> measurements of weight or volume, quantity, kind
> or amount of freight, for transport by [IC] at
> any particular time or place.

(Id. at ¶ 2). The ELOCs also required ICs to pay into an

escrow fund controlled by FedEx, wear FedEx uniforms,

maintain their trucks with FedEx signs and permits, and

provide written notice to FedEx before performing

transportation services for other carriers. (Id. at ¶¶

6(e), 7, 12, 14).

The ELOCs provided several methods for termination of

the ELOC:

> Either Party may terminate this Operating
> Contract (1) at any time, without cause, by
> giving written notice [to] the other Party at
> least thirty (30) days prior to the effective
> termination date or (2) immediately and at any
> time, by giving written notice to the other Party
> in the event of a material breach of any
> provision of this Operating Contract by such
> other Party.

(Id. at 15(a)).

The ELOCs' initial term ran through July 31, 2007, with automatic renewal for successive annual terms. (Id.). However, in August of 2007, FedEx entered into revised ELOCs with current ICs. (Doc. ## 137 at 3; 137-2; 137-3; 137-4). The revised ELOCs contained a three (3) day, rather than thirty (30) day, written notice requirement in the event of termination without a material breach. (Id.).

In February of 2007, FedEx allegedly "unilaterally terminated the contracts of the Plaintiffs by simultaneously withdrawing all work from [Plaintiffs]." (Doc. ## 48 at ¶ 17; 134 at 8). According to Plaintiffs, "[t]his occurred without any written notice whatsoever to the Plaintiffs and the other line-haul ICs, let alone the thirty days' written notice required under each of their ELOCs." (Doc. ## 134 at 8; 134-8 at 69: 6-14; 134-9 at 25:19-23). However, FedEx contends that in February of 2007, FedEx merely informed the ICs that "it appeared FedEx may not have loads to offer the [ICs] on a regular basis; however, FedEx was not terminating their ELOCs." (Doc. # 137 at 5).

## II.  **Procedural History**

This action arises from FedEx's alleged termination of Plaintiffs' ELOCs without the required written notice of

termination. On November 19, 2008, Plaintiffs filed their class action complaint against FedEx alleging three counts. (Doc. # 1). Plaintiffs filed their first amended class action complaint on March 15, 2010, alleging the same three counts. (Doc. # 48). Count I is a claim for breach of contract for failure to abide by the thirty day notice requirement. (Id. at 10). Count II alleges a violation of the implied duty of good faith and fair dealing. (Id. at 12). Finally, Count III asserts a claim for a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201. (Id. at 13).

Plaintiffs filed a motion for class certification on March 12, 2010. (Doc. # 46). On March 29, 2011, this Court denied Plaintiffs' motion for class certification, finding that Plaintiffs failed to meet the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) and the predominance requirement of 23(b)(3), which requires common questions of law or fact to predominate over questions affecting individual class members. (Doc. # 60).

On February 28, 2013, the Eleventh Circuit reversed this Court's denial of class certification and remanded the case for further review. (Doc. # 116 at 9). Specifically, the Eleventh Circuit stated, "Because the district court

based its denial of class certification on the parties'
oral communications without analyzing whether those oral
communications were indeed material to the issue of breach
of contract under Florida law, [the Eleventh Circuit]
conclude[s] that the district court abused its discretion."
(Id.).

Plaintiffs now move this Court to order, pursuant to
Federal Rule of Civil Procedure 23 and Local Rule 4.04,
that this action may proceed as a class action with
Plaintiffs representing all persons defined as follows:

> All persons and entities throughout the United
> States operating as independent contractors (ICs)
> with Equipment Lease and Operating Contracts
> (ELOCs) who contracted to carry freight for FedEx
> National LTL, Inc. (FedEx) and whose ELOCs were
> terminated by FedEx without 30 days' written
> notice.

(Doc. # 134 at 2).

### III. **Legal Standard**

A district court has broad discretion in determining
whether to certify a class. Washington v. Brown &
Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir.
1992); Griffin v. Carlin, 755 F.2d 1516, 1531 (11th Cir.
1985). As explained in Valley Drug Co. v. Geneva
Pharmaceuticals, Inc., 350 F.3d 1181, 1187 (11th Cir.

2003), Federal Rule of Civil Procedure 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." Under Rule 23(a), a class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The burden of proof to establish the propriety of class certification rests with the advocate of the class, and failure to establish any one of the four Rule 23(a) factors and at least one of the alternative requirements of Rule 23(b) precludes class certification.[1] Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).

---

[1] Plaintiffs seek certification under Rule 23(b)(3). (Doc. # 134 at 19). Subsection (3) is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

This Court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug Co., 350 F.3d at 1188, n.15; see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978)("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.")(internal citations omitted).

## IV. **Analysis**

### A. **Rule 23(a) Requirements**

Before a class can be certified through one of the provisions of Rule 23(b), it must first satisfy several prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. See Buford v.

H & R Block, Inc., 168 F.R.D. 340, 347 (S.D. Ga. 1996)(quoting Fed. R. Civ. P. 23(a)).

    1.  **Numerosity**

    Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "mere allegations of numerosity are insufficient," Fed. R. Civ. P. 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013); see Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009); Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983)(explaining that the class representative is not required to establish the exact number in the proposed class). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." Manno, 289 F.R.D. at 684 (quoting Vega, 564 F.3d at 1267).

    Although mere numbers are not dispositive, the Eleventh Circuit has indicated that less than twenty-one class plaintiffs is inadequate, and more than forty class

plaintiffs is generally enough to satisfy the rule. Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986). The Court may also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." Walco Inv., Inc. v. Thenen, 168 F.R.D. 315, 324 (S.D. Fla. 1996).

According to Plaintiffs, "over 2,900 trucks were involved in the delivery of freight for [FedEx] at the time it took over Watkins' operations." (Doc. # 48 at ¶ 20). Plaintiffs submit that "[b]ased on the discovery conducted to date, [P]laintiffs have identified for certain at least 244 ICs that meet the criterion set forth in the class definition[:] [n]one of these ICs were given written notice prior to termination. . . ." (Doc. # 134 at 14).

FedEx contends that Plaintiffs have not satisfied the numerosity requirement because Plaintiffs: (1) "seek to subtly change the actual class to those whose ELOCs ended for any reason, improperly shifting the burden to FedEx to prove it did not terminate the ELOCs," and (2) "seek to artificially bolster the size of the class by making it a

National class without a factual basis." (Doc. # 137 at
13). Specifically, FedEx claims that Plaintiffs have
derived their estimates from the production of ICs' files
whose ELOCs were terminated between September of 2006 and
October of 2007, but did not exclude ICs who: "(a)
initiated the termination of their own ELOC, (b) had an
ELOC that required only three days' notice of termination;
(c) received adequate notice; (d) were terminated outside
of the late February, early March time frame in which
Plaintiffs' ELOCs were terminated; or (e) who heard the
alleged misrepresentations." (Id.).

Upon review, the Court finds that although some of the
244 potential class members identified by Plaintiffs may
ultimately not meet the class definition, the submission by
Plaintiff that at least 244 ICs meet the criterion set
forth in the class definition is sufficient to meet the
"generally low hurdle" of the numerosity requirement. See
Manno, 289 F.R.D. at 684; Vega, 564 F.3d at 1267.
Furthermore, the Court finds that a potential class size of
244 ICs is sufficiently large for the Court to presume
joinder is impracticable. See Cox, 784 F.2d at 1553.
Therefore, the Court finds that Plaintiffs have met their
burden of demonstrating the numerosity requirement.

2.   <u>Commonality</u>

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality pertains to the characteristics of the group or class as a whole, unlike typicality which refers to the individual characteristics of the class representative as compared to those of the class members. <u>Piazza v. Ebsco Indus. Inc.</u>, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing <u>Prado-Steiman v. Bush</u>, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Commonality "does not require complete identity of legal claims." <u>Johnson v. Am. Credit Co. of Ga.</u>, 581 F.2d 526, 532 (5th Cir. 1978). In fact, commonality can be satisfied even with some factual variations among class members. <u>Armstead v. Pingree</u>, 629 F. Supp. 273, 280 (M.D. Fla. 1986).

In <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (2001), the Supreme Court clarified the commonality requirement for class certification by specifically rejecting the use of generalized questions to establish commonality. Noting that "any competently crafted class complaint literally raises common questions," the Court focused the required discussion as follows:

> What matters to class certification . . . is not
> the raising of common questions – even in droves
> - but, rather the capacity of a classwide
> proceeding to generate common answers apt to
> drive the resolution of the litigation.
> Dissimilarities within the proposed class are
> what have the potential to impede the generation
> of common answers.

Id. at 2551 (internal citation omitted). The Court

explained that the "common contention" underpinning a

finding of Rule 23(a)(2) "must be of such a nature that it

is capable of class wide resolution – which means that

determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims

in one stroke." Id.

Plaintiffs argue that the commonality requirement is

satisfied because:

> [T]here was nothing individual about FedEx's
> actions and inactions in terms of how it treated
> each and every class member. FedEx contracted
> with the ICs to move freight and maintained the
> exact same relationship with each of them. The
> terms and conditions of the [ELOCs] were the
> same, the way that FedEx accounted for the
> payments was the same, the way FedEx treated the
> ICs was the same, and the absence of any written
> notice of termination was the same. As a result
> of FedEx's failures, the [ELOCs] were breached in
> the same manner and the class members each have
> suffered the same types of injuries.

13

(Doc. # 134 at 3). According to Plaintiffs, "[t]hese allegations demonstrate that the members of the class were all aggrieved by a common course of conduct – FedEx's deceptive and unfair action in breaching all of the ICs' ELOCs by failing to provide any written notice of termination as set forth in the ELOCs and in accordance with FedEx's duty of good faith and fair dealing." (Id. at 15).

Upon review of the record, the Court finds that there are "questions of law or fact common to the class." These questions include, but are not limited to: (1) whether FedEx entered into an ELOC with the IC class member; (2) whether the ELOC required FedEx to provide thirty days' written notice of termination; and (3) whether FedEx provided the required written notice.

The Court finds that these questions are sufficient to satisfy the commonality requirement. "These [common questions] are not simply convenient or collateral common [questions]. Rather, these questions are central to the case and their centrality and commonality support the policy objectives behind class certification." Buford, 168 F.R.D. at 350. Therefore, Plaintiffs have met their burden of demonstrating the commonality requirement.

14

3.   **Typicality**

Class certification also requires that the claims of the class representatives be typical of those of the class. See Fed. R. Civ. P. 23(a)(3). In order to establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Id.

When the class representative's injury is different from that of the rest of the class, his claim is not typical and he cannot serve as the class representative. Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Moreover, when proof of the class representative's claim would not necessarily prove the claims of the proposed class members, the class representative does not satisfy the typicality requirement. Brooks v. Southern Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990). "Typicality, however, does not require identical claims or defenses." Kornberg, 741 F.2d at 1337. "A factual variation will not

render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." <u>Id.</u>

FedEx argues that Plaintiffs' claims are not typical of the claims or defenses of the class as a whole for three reasons. (<u>See</u> Doc. # 137). First, FedEx asserts that "an examination of the individualized oral communications with potential class members is necessary to refute Plaintiffs' characterization of the conversations as an oral termination." (<u>Id.</u> at 17-20). Specifically, FedEx notes "Plaintiff [Britt Green Trucking, Inc.] admits that he was told his [ELOC] was not being terminated, but that he would not be receiving any loads, at least in the short term, and that he could continue to operate under the terms of the [ELOC]. . . . Accordingly, proof of [Britt Green Trucking, Inc.'s] claim would not necessarily be the same as the claims of the rest of the class members." (<u>Id.</u> at 17)(quoting Doc. # 60 at 9).

Second, FedEx contends that its unique defenses – waiver and estoppel – asserted against Plaintiffs and other potential class members destroy typicality. (Doc. # 137 at 20-21). Finally, FedEx asserts Plaintiffs' damages are not typical because "each class member's claim for lost profits

damages would be inherently individualized; and therefore, not amenable to class treatment." (Id. at 21-22).

This Court acknowledges FedEx's contention that the typicality element is not met because Plaintiffs may be subject to unique defenses and individualized issues based on their individual relationship with FedEx that differs from that of members of the potential class. Particularly, this Court acknowledges FedEx's contention that this Court will need to inquire into the oral communications between FedEx and the various ICs. However, this Court finds that those concerns are better addressed under the predominance requirement of Fed. R. Civ. P. 23(b)(3). Therefore, for purposes of the present analysis, the Court will presume the typicality requirement to be satisfied.

### 4.   **Adequate Representation by Class Representatives**

The final requirement for class certification under Rule 23(a) is adequate representation.  See Fed. R. Civ. P. 23(a)(4). This prerequisite requires that the class representatives have common interests with the non-representative class members and requires that the representatives demonstrate that they will vigorously prosecute the interests of the class through qualified counsel. Piazza, 273 F.3d at 1346. Thus, the adequacy of

representation analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." Valley Drug Co., 350 F.3d at 1189 (quoting In re HealthSouth Corp. Sec. Litig., 213 F.R.D. 447, 460-61 (N.D. Ala. 2003)). "The existence of minor conflicts alone will not defeat a party's claim to class certification." Id. Rather, "the conflict must be a fundamental one going to the specific issues in controversy." Id.

Here, FedEx does not indicate that any conflicts of interest exist between Plaintiffs and the class. In addition, FedEx does not contest the qualifications of Plaintiffs' counsel and there is no indication that Plaintiffs will not adequately prosecute this action. Therefore, this Court finds that Plaintiffs have met their burden of demonstrating the adequacy of representation requirement.

### B.   **Rule 23(b) Requirements**

In addition to satisfying the prerequisites of Rule 23(a), parties seeking class certification must satisfy at least one of the alternative requirements of Rule 23(b):

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

**(1)** prosecuting separate actions by or against individual class members would create a risk of:

>    **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>    **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

>    **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

>    **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

>    **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). In their Motion for Class Certification, Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3), and limit their discussion to such. (Doc. # 134 at 19). As a result, the Court will likewise limit its analysis to the application of Fed. R. Civ. P. 23(b)(3).

For common issues to predominate, the plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as whole, . . . predominate over those issues that are subject to individualized proof." Kerr v. City of West Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989) (internal quotations and citation omitted).

"If 'after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, their claims are not suitable for class certification under Rule 23(b)(3).'" Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1170 (11th Cir. 2010)(quoting Klay v.

Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004), rev'd on other grounds; see Perez v. Metabolife Int'l, Inc., 218 F.R.D. 262, 273 (S.D. Fla. 2003)(declining class certification because "any efficiency gained by deciding the common elements will be lost when separate trials are required for each class member in order to determine each member's entitlement to the requested relief").

"The predominance inquiry requires an examination of 'the claims, defenses, relevant facts, and applicable substantive law,'. . . to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009)(quoting Klay, 382 F.3d at 1254).

In this case, the Court finds that common issues of law and fact do not predominate over questions affecting individual class members. Instead, this Court finds that the adjudication of Plaintiffs' claims on a class-wide basis would be consumed by individual factual inquiries and individual application of the pertinent substantive law. See Babineau, 576 F.3d at 1191-95 (affirming district court's denial of class certification after deciding that

individualized questions were not suitable for class-wide adjudication).

1.   **Liability**

In their Motion, Plaintiffs claim that the predominant issue in this action "is whether FedEx breached the ELOCs with its ICs by failing to provide written notice of termination as required under the [ELOCs]." (Doc. # 134 at 20). Under Florida law,[2] the elements of breach of contract are "(1) a valid contract; (2) a material breach; and (3) damages." Abbott Lab., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)). Plaintiffs submit that "[t]he resolution of this overarching issue predominates over any individual issues that may exist with respect to the ICs." (Doc. # 134 at 20).

However, this Court finds it foreseeable that in determining FedEx's liability, if any, the fact finder would be required to engage in individualized inquiries into the conduct of each IC as well as the oral communications between FedEx and the ICs to determine if

_____

[2]   Both parties have provided this Court with ELOCs to consider, all of which state: "Governing Law. This Operating Contract shall be interpreted under the laws of the State of Florida without regard to the conflict of laws principles thereof." (Doc. ## 48, Ex. A at ¶ 24; 134-5 at ¶ 24; 134-6 at ¶ 24; 137-4, Ex. 7-10).

such "communications were indeed material to the issue of breach of contract under Florida law." (See Doc. # 116 at 9). Therefore, this Court finds class certification to be inappropriate. See <u>Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.</u>, No. 8:08-cv-1931-T-30TBM, 2009 WL 928321, at *6 (M.D. Fla. Apr. 3, 2009)("Courts have repeatedly held that breach of contract claims are inappropriate for class certification where . . . they involve individualized inquiries to determine liability and damages.").

    a.   **Valid Contract**

This Court finds that the initial element – a valid contract – would easily be satisfied. According to Plaintiffs, "FedEx has already produced all of [the ICs' files], which contain ELOCs, during the course of discovery." (Doc. # 134 at 20). These ELOCs are the contracts between the ICs and FedEx which describe both the manner in which FedEx would lease transportation equipment from the ICs and the manner in which the ICs would provide transportation services. (See Doc. # 48, Ex. A). FedEx does not contest this point.

    b.   **Material Breach**

Plaintiffs submit that only one body of evidence – the ICs' files, which contain the individual ELOCs - will be necessary to prove this issue. (Doc. # 134 at 21).   "FedEx has admitted, through both its deposition testimony and its [a]nswer to the [c]omplaint, that these files do not contain written termination notices provided to the ICs." (Id. at 20). "The admitted class-wide failure to send written notice of termination amounts to a *per se* material breach." (Id. at 18). However, in determining the issue of material breach, this Court finds that the fact finder would have to engage in a two-part inquiry.

First, the fact finder would have to determine whether FedEx terminated the relevant ELOC, and therefore was required to provide written notice of termination. FedEx provided this Court with the affidavit of Paul Leonard,[3] wherein Leonard states:

> Following the filing of this lawsuit, [FedEx] performed a search for ELOCs with [ICs] that were

---

[3]   Mr. Leonard was the Business Analyst for the Contractor Affairs Department for Watkins prior to its acquisition, and continued in this role at FedEx National, LTL, Inc. from September 3, 2006, to March of 2007. (Doc. # 137-4 at ¶ 1). In March of 2007, Mr. Leonard became Manager of the Contractor Affairs Department and continued in this role until January 30, 2011, when it was merged into FedEx Freight, Inc. (Id.). He is currently a Purchase Transportation Advisor for FedEx Freight. (Id.).

terminated by FedEx from September 3, 2006 through 2007. However, as kept in the usual course of business, [FedEx's] files do not typically contain information regarding which party terminated the ELOC, or the manner of termination.

* * *

[FedEx] could only compile a list of [ICs'] files which reflected cancellation of an ELOC during the period of inquiry. When ELOCs are cancelled by either party, the [IC] executes . . . [a] Receipt of Equipment . . ., which is a receipt for the return of his unit . . . [and the] Transponder Device Transfer Form . . ., which shows that he has returned FedEx's transponder device to FedEx.

* * *

Once [an IC] has executed the bottom half of the Receipt, or the bottom half of the Receipt and the Transfer Form . . ., then FedEx considers that [IC's] ELOC terminated. In that instance, FedEx would not be required to notify that [IC] that the ELOC was ending prior to the term of the ELOC and that the automatic renewal would not occur.

* * *

The list [FedEx] compiled reflected 244 [ICs] that had ELOC cancellations during the period of inquiry.

* * *

> The 244 files were produced without prior review for factors that might distinguish those [ICs] from Plaintiffs' proposed class. For example, the 244 files were produced <u>regardless</u> of:(a) whether any such file contained evidence that the [IC] initiated the termination; (b) whether the [IC] was bound to an ELOC that required only three (3) days notice of termination; (c) whether sufficient notice was provided; (d) whether the termination occurred outside of the late February, early March time frame in which the Plaintiffs' ELOCs were cancelled; or (e) what state the [IC] was in.

(Doc. # 137-4 at 3-4)(emphasis in original).

In addition, FedEx has provided the Court with written correspondence between individual ICs and FedEx illustrating that several ICs "initiated the ELOC termination." (Doc. # 137-4 at ¶ 16). Therefore, according to Mr. Leonard's affidavit, FedEx was not required to provide written notice of termination. (<u>Id.</u>).

Thus, this Court finds that in order to determine whether FedEx "breached the ELOCs with its ICs by failing to provide written notice of termination as required under the [ELOCs]," the fact finder would first be required to identify and segregate the ICs whose ELOCs were terminated by FedEx versus those ICs whose ELOCs ended for other reasons. In making that determination, the fact finder may

have to inquire into oral communications between the individual IC and FedEx to determine if such communication was material to the breach of contract issue under Florida law. See Beefy Trail, Inc. v. Beefy King Int'l, Inc., 267 So. 2d 853, 857 (Fla. 4th DCA 1972)(stating "[t]o constitute a vital or material breach a defendant's nonperformance must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part.").

Then, if the particular ELOC was found to have been terminated by FedEx, the fact finder would have to determine whether FedEx provided the requisite written notice of termination to the particular IC. FedEx has provided the Court with affidavits indicating that while FedEx's 2006 ELOCs contained a thirty day written notice requirement, in August of 2007, FedEx entered into revised contracts with ICs that contained a three day written notice requirement. (Doc. ## 137-2; 137-3; 137-4). Thus, in further determining whether FedEx "breached the ELOCs with its ICs by failing to provide written notice of termination as required under the [ELOCs]," the fact finder would have to inquire as to whether each IC's particular ELOC,

terminated by FedEx, was bound by the thirty day written notice requirement or the three day written notice requirement.

Therefore, the determination of whether Plaintiffs have satisfied the second element of breach of contract – material breach – would require individual inquiries into the conduct of each particular IC and the communications engaged in by FedEx and the particular IC. Regarding any oral communications, as the Eleventh Circuit has indicated, the fact finder would have to inquire as to whether the "ICs consented to a modification of the [thirty]-day written termination notice, such that oral termination without advanced notice would suffice, [and whether the] modification was supported by consideration." (See Doc. # 116 at 9).

### c.   Damages

According to Plaintiffs, their economic expert, Dr. Albert Lee, has reviewed and analyzed the discovery documents to prepare an economic model which will calculate damages on a class wide basis. (Doc. # 134 at 21). This model – using evidence common to the class – "calculate[s] the number of miles that the class would have driven but for FedEx's termination." (Doc. # 152 at 3). Dr. Lee then

converts "the total miles driven into class-wide dollar figures based on a historical ratio of net earnings to miles driven specific to each [IC]." (Id.). Plaintiffs assert that this methodology has long been approved in the Eleventh Circuit. (Doc. ## 140 at 8, 152 at 3)(citing In re Terazosin Hydrochloride Antitrust Litig., 203 F.R.D. 551 (S.D. Fla. 2001); Pettway v. Am. Cast Iron Pipe Co., 681 F.2d 1259 (11th Cir. 1982)).

However, FedEx contends that each class member's claim for damages would be inherently individualized and such individualized inquiry would inevitably overwhelm questions common to the class. (Doc. ## 137 at 28; 149 at 4). FedEx submits that such individual inquiry would require consideration of a number of individual factors, which include, but are not limited to: (1) whether ICs obtained work with other carriers; (2) the level of compensation; (3) which trucks remain operable; and (4) what incremental costs and expenses were saved by not operating their trucks. (Doc. # 137 at 28).

"Individualized damages issues are of course least likely to defeat predominance 'where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods.'" Sacred

Heart, 601 F.3d at 1179 (quoting Klay, 382 F.3d at 1259-60 ("where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.")).

However, even when damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical method, the relevant inquiry for class certification purposes is still "whether questions of liability to the class predominate over individual issues relating to damages." Sacred Heart, 61 F.3d at 1179; see also Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013)(finding plaintiff's damages model did not establish injury and damages through common proof. Instead, individualized questions as to liability overwhelmed common issues.); Sikes v. Teleline, Inc., 281 F.3d 1350, 1366 (11th Cir. 2002), rev'd on other grounds (stating "[t]hese claims will involve extensive individualized inquiries on the issues of injury and damages – so much so that a class action is not sustainable."); Rutstein v. Avis Rent-A-Center Sys., Inc., 211 F.3d 1228, 1235, 1240 (declining to certify a class because "most, if not all, of the

plaintiffs' claims will stand or fall . . . on the resolution of . . . highly case-specific factual issues" and "liability for damages is a necessarily individualized inquiry").

The Court finds that even if Plaintiffs' expert has prepared an economic model that can calculate damages on a class-wide basis, the individualized inquiry that will be required to establish whether FedEx materially breached the ELOC still predominates over common questions of law or fact. See July v. Bd. of Sch. Comm'rs, 291 F.R.D. 653 (S.D. Ala. 2013)(finding that common questions did not predominate in light of the number of individualized questions addressing both liability and damages.); LaBauve v. Olin Corp., 231 F.R.D. 632, 678 (S.D. Ala. 2005)(stating "[b]oth liability and damages determinations are chock full of individual-specific inquiries. Thus, the need for individualized damages calculations, when combined with the numerous liability and limitations issues requiring plaintiff-by-plaintiff scrutiny, counsels strongly against class certification pursuant to Rule 23(b)(3).").

**2.   Defenses**

Moreover, this Court finds that in determining FedEx's liability, if any, the fact finder would have to inquire,

31

on an individual basis, as to whether any affirmative defenses asserted by FedEx bar the claims of each particular IC.

In the present case, FedEx has raised the affirmative defenses of waiver and estoppel. (Doc. # 137 at 20). FedEx contends that in determining whether FedEx breached the ELOCs with its ICs by failing to provide written notice of termination as required under the ELOCs, and whether such breach is barred by an affirmative defense, the "fact finder would have to examine the oral conversations and circumstances surrounding each termination to determine the validity of FedEx's waiver and estoppel defenses. . . ." (Id. at 21).

Under Florida law, a party invoking the affirmative defense of waiver must demonstrate: "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." Goodwin v. Blu Murray Ins. Agency, Inc., 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006). "Waiver may be implied by conduct, but that conduct must make out a clear case." Id. Furthermore, a party invoking the affirmative defense of estoppel must demonstrate: "(1) the party

against whom the estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts; (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed his position to his detriment based on the representation and his reliance on it." Winans v. Weber, 979 So. 2d 269, 274-75 (Fla. 2d DCA 2007)(citing Watson Clinic LLP v. Verzosa, 816 So. 2d 832, 834 (Fla. 2d DCA 2002)).

Upon consideration, the Court finds that in order to determine whether FedEx "breached the ELOCs with its ICs by failing to provide written notice of termination as required under the [ELOCs]," the fact finder would have to conduct individual inquiries to determine whether any viable contractual defenses exist for each particular IC. See Vega, 564 F.3d at 1274 (recognizing that where the defendant "proffer[s] individualized and varying evidence to defend against claims of individual class members . . . significant questions concerning ultimate liability [may] remain for many class members. As such, the common questions [will] not predominate"); Sacred Heart, 601 F.3d at 1176-77 (stating that "[e]ven the most common contractual questions - those arising, for example, from

33

the alleged breach of a form contract – do not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements. The risk of voluminous and individualized extrinsic proof runs particularly high where a defendant raises substantial affirmative defenses to breach.")

**V.**   **Conclusion**

Although this Court has presumed for purposes of the present analysis that Plaintiffs have satisfied the typicality requirement, and therefore satisfied the requirements of Fed. R. Civ. P. 23(a), this Court finds that Plaintiffs have not satisfied the predominance requirement of Rule 23(b)(3). The fact finder would be unable to determine whether FedEx "breached the ELOCs with its ICs by failing to provide written notice of termination as required under the [ELOCs]," without engaging in individualized inquiries for each particular IC. These individualized inquiries will predominate over common questions of law and fact. As a result, this Court denies Plaintiffs' Motion for Class Certification.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs Britt Green Trucking, Inc. and Lanny D. Whitson's Motion for Class Certification (Doc. # 134) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>15th</u> day of November, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record