UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRITT GREEN TRUCKING, INC.
and Donna Isham, Administratrix
of the Estate of Lanny D.
Whitson,

   Plaintiffs,

v.         Case No. 8:09-cv-445-T-33TBM

FEDEX NATIONAL, LTL, INC.,

   Defendant.
_____/

## ORDER

  This cause comes before the Court for consideration of
Defendant FedEx National, LTL, Inc.'s Motion in Limine to
Exclude the Testimony and Expert Report of Marcie D. Bour
(Doc. # 94), filed on November 28, 2011 (Although filed on
November 28, 2011, this Court notes that in light of this
Court's Order granting FedEx's Motion for Summary Judgment
(Doc. # 85), and the subsequent appeals (Doc. ## 100, 164),
the Motion is only now ripe for this Court's review);
Plaintiffs Britt Green Trucking, Inc. and Donna Isham,
Administratrix of the Estate of Lanny D. Whitson's[1] Motion

_____

[1] On November 18, 2013, Plaintiffs filed a suggestion of
death as to Lanny D. Whitson. (Doc. # 159). Upon the filing
of an unopposed motion for substitution of party (Doc. # 160),

Under Daubert to Exclude the Expert Opinions of FedEx's Expert Lloyd J. Morgenstern, or in the alternative, Plaintiffs' Motion in Limine to Strike Certain Portions of Lloyd J. Morgenstern's Expert Report (Doc. # 154), filed on November 14, 2013; and FedEx's Daubert Motion to Exclude the Testimony and Expert Report of Dr. Albert Lee (Doc. # 157), filed on November 15, 2013.  These Motions are ripe for the Court's review. Upon due consideration and for the reasons set forth below, (1) FedEx's Motion in Limine to Exclude the Testimony and Expert Report of Marcie D. Bour is denied; Plaintiff's Motion Under Daubert to Exclude the Expert Opinions of FedEx's Expert Lloyd J. Morgenstern, or in the alternative, Plaintiffs' Motion in Limine to Strike Certain Portions of Lloyd J. Morgenstern's Expert Report is denied as moot; and FedEx's Daubert Motion to Exclude the Testimony and Expert Report of Dr. Albert Lee is denied without prejudice.

## I.   **Factual Background**

In August of 2006, FedEx took control of Watkins Motor Lines, an interstate motor carrier based in Lakeland, Florida, which employed individuals and trucking companies as independent contractors ("ICs"). (Doc. # 48 at ¶¶ 9-10). On

_____

this Court substituted Donna Isham, Administratrix of the Estate of Lanny D. Whiston for Lanny D. Whitson (Doc. # 161).

the date of the Watkins acquisition, FedEx entered into
Equipment Lease and Operating Contracts ("ELOCs") with ICs,
including Plaintiffs, in various locations throughout the
United States. (Id. at ¶¶ 11-12).

The ELOCs utilized by FedEx described both the manner
in which FedEx would lease transportation equipment from ICs
and the manner in which ICs would provide transportation
services. (See Doc. # 48, Ex. A). The ELOCs provided as
follows:

> [FedEx] desires to lease, on an as-needed basis,
> transportation equipment it does not own from [IC]
> and desires that [IC] provide transportation
> services, as needed, for the transportation of
> certain commodities provided by [FedEx] or its
> customers; and [IC] desires to contract with
> [FedEx] to transport such commodities.

(Id. at 1). The ELOCs further stated:

> [FedEx] agrees to make commodities available to
> [IC] for shipment, from time to time, although this
> shall not be construed as an agreement by [FedEx]
> to furnish any specific number or types of loads or
> units, pounds, gallons, or any other measurements
> of weight or volume, quantity, kind or amount of
> freight, for transport by [IC] at any particular
> time or place.

(Id. at ¶ 2).

The ELOCs provided several methods for termination of
the ELOC:

> Either Party may terminate this Operating Contract (1) at any time, without cause, by giving written notice [to] the other Party at least thirty (30) days prior to the effective termination date or (2) immediately and at any time, by giving written notice to the other Party in the event of a material breach of any provision of this Operating Contract by such other Party.

(Id. at 15(a)).

In February of 2007, FedEx allegedly "unilaterally terminated" the contracts of the Plaintiffs by simultaneously withdrawing all work from Plaintiffs. (Doc. # 48 at ¶ 17). According to Plaintiffs, this occurred without any written notice to the Plaintiffs and the other ICs, let alone the thirty days' written notice required under each of their ELOCs. (See id.).

**II.  Procedural History**

This action arises from FedEx's alleged termination of Plaintiffs' ELOCs without the required written notice of termination. On November 19, 2008, Plaintiffs filed their class action complaint against FedEx (Doc. # 1), and filed an amended class action complaint on March 15, 2010, setting forth the following counts: (1) Breach of Contract; (2) Breach of the Duty of Good Faith and Fair Dealing; and (3) Violation

of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201. (Doc. # 48)

Plaintiffs filed a motion for class certification on March 12, 2010. (Doc. # 46). On March 29, 2011, this Court denied Plaintiffs' motion for class certification, finding that Plaintiffs failed to meet the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) and the predominance requirement of 23(b)(3). (Doc. # 60). Thereafter, the Court granted FedEx's motion for summary judgment, and judgment was entered in favor of FedEx. (Doc. ## 98, 99).

On February 28, 2013, the Eleventh Circuit reversed this Court's Orders granting summary judgment in favor of FedEx and denying class certification, and remanded the case for further review. (Doc. # 116 at 9-10). Specifically, in regards to the motion for class certification, the Eleventh Circuit stated, "Because the district court based its denial of class certification on the parties' oral communications without analyzing whether those oral communications were indeed material to the issue of breach of contract under Florida law, [the Eleventh Circuit] conclude[s] that the district court abused its discretion." (Id.).

Thereafter, Plaintiffs filed a second motion for class certification (Doc. # 134) on July 15, 2013, requesting certification of the following class:

> All persons and entities throughout the United States operating as independent contractors (ICs) with Equipment Lease and Operating Contracts (ELOCs) who contracted to carry freight for FedEx National LTL, Inc. (FedEx) and whose ELOCs were terminated by FedEx without 30 days' written notice.

(Id. at 2). This Court again denied Plaintiffs' motion on November 15, 2013. (Doc. # 155). Subsequently, on December 3, 2013, Plaintiffs filed a motion for a stay pending the outcome of Plaintiffs' Fed. R. Civ. P. 23(f) appeal to the United States of Appeals for the Eleventh Circuit (Doc. # 164), which this Court granted on December 23, 2013 (Doc. # 169).

On April 1, 2014, the Eleventh Circuit issued an Order denying Plaintiffs' petition for leave to appeal pursuant to Fed. R. Civ. P. 23(f). (Doc. # 170). In light of the Eleventh Circuit's Order, the Court determines that it has jurisdiction to rule on the pending Motions in Limine (Doc. ## 94, 154, 157), which are ripe for this Court's review. The Court has reviewed the Motions, the responses thereto, and the timely filed replies, and is otherwise fully advised in the premises.

6

### III. **Legal Standard**

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment. Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir. 2005)(citations omitted). Further, the Eleventh Circuit has pronounced: "We will only reverse a district court's ruling concerning the admissibility of evidence where the appellant can show that the judge abused his [or her] broad discretion and that the decision affected the

substantial rights of the complaining party." <u>Wood v. Morbark
Indus., Inc.</u>, 70 F.3d 1201, 1206 (11th Cir. 1995).

The admissibility of expert testimony is governed by
Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an
> opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized
> knowledge will help the trier of fact to
> understand the evidence or to determine a fact
> in issue; (b) the testimony is based on
> sufficient facts or data; (c) the testimony is
> the product of reliable principles and
> methods, and (d) the expert has reliably
> applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.

Rule 702 is a codification of the landmark case of
<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579
(1993). In <u>Daubert</u>, the Supreme Court described the
gatekeeping function of the district court to ensure expert
testimony and evidence "is not only relevant, but reliable."
<u>Id.</u> at 589. As stated in the Advisory Committee Notes
accompanying Rule 702 of the Federal Rules of Evidence, "A
review of the case law after <u>Daubert</u> shows that the rejection
of expert testimony is the exception rather than the rule."

<u>See</u> Advisory Committee Notes to the 2000 Amendment to Rule 702. In addition, the trial judge is afforded broad discretion in deciding <u>Daubert</u> issues. <u>See</u> <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999).

## IV.  **Analysis**

### A. **Testimony and Expert Report of Marcie D. Bour**

FedEx seeks exclusion of the testimony and expert report of Plaintiffs' economic expert Marcie D. Bour because "(i) the majority of Ms. Bour's testimony is irrelevant to any possible damages determination, (ii) Ms. Bour's testimony is not based on sufficient facts and data to extrapolate an accurate damages calculation; (iii) Ms. Bour's testimony does not account for market trends; (iv) Ms. Bour's calculations do not take into account Plaintiffs' obligation to mitigate; and as a result, (v) Ms. Bour's conclusions are entirely speculative, unfounded, and irrelevant." (<u>See</u> Doc. # 94). Plaintiffs contest FedEx's criticisms of Ms. Bour's lost profit report and testimony and argue that any failure on behalf of Ms. Bour to take into account certain expenses, costs, or market trends, as alleged by FedEx, goes to the weight of Ms. Bour's testimony and not its admissibility. (Doc. # 97 at 13).

As pointed out by Plaintiffs, FedEx does not cite directly to the Daubert factors in its Motion. (Id. at 1, n.1). Nonetheless, upon review of the arguments submitted by FedEx and its cited legal authority, the Court considers FedEx's Motion to raise arguments under Daubert and will address the Motion under the Daubert standard.

### 1. **Competence and Qualification**

Ms. Bour is an accountant who provides forensic accounting and litigation consulting services. (Doc. # 94 at 2). As noted in Plaintiffs' response, "Ms. Bour's credentials, experience, and expertise" have not been questioned by FedEx. (Doc. # 97 at 3, n.2). To date, FedEx has not raised any doubt as to this contention. Therefore, this Court finds that Ms. Bour is competent and qualified to provide her expert report and testimony, and the Court will not address this requirement further.

### 2. **Methodology**

FedEx contends that Ms. Bour's report and testimony should be excluded "because the methodology used is unsound and because the conclusions are not relevant to the issue before the trier of fact." (Doc. # 94 at 3). First, FedEx seeks to strike the portions of Ms. Bour's expert report that purport to calculate lost profits beyond the thirty day notice

10

period as FedEx suggests that such damages are not available under the law. (Id. at 5). According to FedEx, "the law, of both Florida and several other states, clearly reflects that even if Plaintiffs were employees that were terminated without sufficient notice, then any potential award of damages would be limited to the lost profits during that notice period." (Id. at 7)(citing Mousa v. Lauda Air Luftfahrt, A.G., 285 F. Supp. 2d 1329, 1346 (S.D. Fla. 2003)(finding in a breach of contract action based on termination without notice, that it was a legal certainty that plaintiff could not satisfy the monetary minimum for diversity jurisdiction because any possible breach of contract damages must be limited to the notice time period)). Therefore, in this case, assuming Plaintiffs' allegations to be true, any potential damages would be limited to Plaintiffs' lost profits during the thirty days following the alleged termination, which is contrary to the lost profits calculations provided by Ms. Bour.

Next, FedEx argues that Ms. Bour's expert report should be stricken because it is not based on sufficient facts and data to extrapolate an accurate calculation of purported damages. (Doc. # 94 at 8). Specifically, in formulating her opinions, Ms. Bour considered the settlement sheets, the

11

ELOCs, the First Amended Complaint, and the Answer and Affirmative Defenses, and of these documents, "the settlement sheets are the only source of numbers" for Ms. Bour's calculations. (Id.). However, according to FedEx, "[t]he settlement sheets do not reflect other expenses" potentially incurred by Plaintiffs in the operation of their trucks, "such as insurance, driver salaries, maintenance, and payroll taxes," and do not consider dates Plaintiffs would have been unable to perform under the ELOCs (i.e. trucks experiencing maintenance issues). (Id. at 8-10). Thus, FedEx posits that Ms. Bour's calculations cannot truly reflect any potential lost profits because her analysis does not take into account the majority of the expenses that Plaintiffs would have incurred in performing the ELOCs. (Id. at 8-9)(citing Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1317 (11th Cir. 2001)("'If the party presents evidence only of gross receipts or fails to prove expenses with some specificity' an award of damages cannot stand.").

Furthermore, FedEx explains that exclusion of Ms. Bour's testimony is warranted as it does not account for market trends; specifically, downward trends in the months leading up to the alleged terminations. (Doc. # 94 at 10). Ms. Bour's damage calculations are based on the average daily

performance during the 2006 calendar year. (Id. at 11). According to FedEx, "an estimation based on the entire year fails to provide an accurate estimation of any alleged lost profits incurred during the thirty day notice period, beginning at the end of February 2007 and continuing into March of 2007, because the business at issue was experiencing a downward trend in demand." (Id.). Therefore, to adequately reflect the downward trend, FedEx suggests that Ms. Bour "should have based her calculations for potential lost profits during the thirty day notice period on the profits Plaintiffs made during the thirty days leading up to the alleged termination," not based on the average daily performance during the 2006 calendar year. (Id.).

Finally, FedEx posits that this Court should strike Ms. Bour's expert report and testimony because her opinions regarding the potential lost profits do not account for Plaintiffs' duty to mitigate, nor the actual mitigation that occurred by one of the Plaintiffs – Mr. Green. (Id.).

Plaintiffs contend, however, that Ms. Bour's methodology satisfies the requirements of Fed. R. Evid. 702 and Daubert. Ms. Bour used the "Before and After" method, and "analyzed the Plaintiffs' settlement sheets from 2006 and extrapolated future lost profits based on the extensive hauling work done

by Plaintiffs in the preceding year." (Doc. # 97 at 8). Plaintiffs submit that the "Before and After" method is an acceptable method in Florida, and "once an expert utilizes an acceptable method of calculation, any criticisms of this method are properly dealt with on cross-examination and are not grounds for excluding the expert's testimony." (Id.).

In addition, Plaintiffs contend that Ms. Bour properly considered damages beyond the thirty day notice period because absent written termination, the Plaintiffs' ELOCs continued "in full force and effect" until the end of the stated term and then automatically renewed pursuant to the automatic renewal clause. (Id. at 9). As it is Plaintiffs' position that FedEx did not provide the proper written notice of termination to terminate the ELOCs, Plaintiffs contend that the ELOCs automatically renewed and thus it was proper for Ms. Bour to consider damages beyond the thirty day notice period. (Id.); contra Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009)(finding the expert's methodology unreliable as it did not match the plaintiff's theory of liability).

Furthermore, Plaintiffs state that the reason Ms. Bour's lost profit calculations do not account for mitigation is because it is FedEx's burden to prove mitigation as an

14

affirmative defense, and FedEx has failed to offer any specific evidence of mitigation for Ms. Bour to consider in her reports. (Doc. # 97 at 10-11). Plaintiffs note, however, that Ms. Bour has reserved her right to supplement her reports in the event FedEx offers specific evidence of mitigation. (Id. at 11, n.4).

Finally, Plaintiffs submit that Ms. Bour's lost profit calculations properly account for all relevant costs, expenses, and market trends. (Id. at 12). Specifically, Ms. Bour reviewed Plaintiffs' settlement sheets; Plaintiffs' depositions, which allowed her to account for driver salaries and payroll taxes; and analyzed Plaintiffs' 2006 earnings record, allowing her to account for any ups and downs of the market over a full calendar year. Accordingly, Plaintiffs argue that Ms. Bour "properly deducted costs and expenses from gross profits in arriving at her damages calculations." (Id.).

The Daubert Court listed four non-inclusive factors courts should consider in determining reliability under Rule 702: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within

15

the scientific community. _Daubert_ 509 U.S. at 593-94. This list of factors, however, "do[es] not exhaust the universe of considerations that may bear on . . . reliability." _Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd._, 326 F.3d 1333, 1341 (11th Cir. 2003); _see also_ _Kumho_, 526 U.S. at 150 ("_Daubert_ makes clear that the factors it mentions do _not_ constitute a 'definitive checklist or test.'")(citation omitted).

The law grants a district court "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." _United States v. Majors_, 196 F.3d 1206, 1215 (11th Cir. 1999). The Court's focus is not "whether the proposed testimony is scientifically correct . . . but only whether or not the expert's testimony, based on scientific principles and methodology, is reliable." _Allison v. McGhan Medical Corp._, 184 F.3d 1300, 1312 (11th Cir. 1999).

However, a "district court's gatekeeper role under _Daubert_ 'is not intended to supplant the adversary system or the role of the jury.'" _Maiz v. Virani_, 253 F.3d 641, 666 (11th Cir. 2001)(quoting _Allison_, 184 F.3d at 1311). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

16

admissible evidence." _Allison_, 184 F.3d at 1311 (quoting

_Daubert_, 509 U.S. at 596).

Upon review of the arguments provided by both parties,

the Court concludes that Ms. Bour's methodology satisfies the

reliability test. FedEx's arguments rest not with the

methodology Ms. Bour utilized – "Before and After" method –

but rather with the dates she used in reaching her conclusion.

(i.e. thirty days prior to notice period in question versus

entire 2006 calendar year). However, under Florida law, the

method Ms. Bour used is reliable. _See_ _G.M. Brod & Co., Inc._

_v. U.S. Home Corp._, 759 F.2d 1526, 1538 (11th Cir.

1985)(finding that the Before and After theory is a generally

recognized method of proving lost profits); _Marshall Auto_

_Painting & Collision, Inc. v. Westco Eng'g, Inc._, No. 6:02CV-

109-ORL22KRS, 2003 WL 25668018, at *7 (M.D. Fla. May 8,

2003)(same).

To the extent FedEx argues that Plaintiffs should be

unable to recover lost profit damages outside the thirty day

notice period, the Court finds that this issue would be more

appropriately addressed on summary judgment, as opposed to

the present Motion. In the event the Court finds this issue

to be a factual determination for the jury, then FedEx's

objections directed to the reliability of Ms. Bour's report

17

and testimony go to the weight of her testimony, rather than its admissibility. See Maiz v. Virani, 253 F.3d 641, 669 (11th Cir. 2001)(noting that objections to methodology go to weight and sufficiency, not admissibility). For the reasons stated above, this Court concludes that Ms. Bour's proffered opinions satisfy the reliability requirement for admissibility.

### 3. Assist the Trier of Fact

Under Rule 702, a properly qualified expert may testify in a given field if their testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." An expert's testimony will assist the trier of fact when it offers something "beyond the understanding and experience of the average citizen." United States v. Paul, 175 F.3d 906, 911 (11th Cir. 1999)(quoting United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985)). Ms. Bour's lost profit analysis is an appropriate subject for expert testimony, and the Court concludes that Ms. Bour's testimony will assist the trier of fact in determining Plaintiffs' damages, if any. Therefore, for the reasons stated above, FedEx's Motion is denied.

### B. Expert Opinion of Lloyd J. Morgenstern

FedEx's expert – Lloyd J. Morgenstern C.P.A., "authored a report on August 28, 2013, in which he 'evaluated' the ELOCs at issue in this case." (Doc. # 154 at 2). According to Plaintiffs, Mr. Morgenstern's opinion "is essentially that the ELOC's are illusory contracts that guarantee no work to the class and thus the class by definition cannot have damages." (Id. at 3). However, Plaintiffs point out that Mr. Morgenstern is a certified public accountant and "[t]here is no indication from his listed qualifications that he has any legal training or experience interpreting the legal meaning of provisions in a contract." (Id.). Accordingly, Plaintiffs suggest that "Mr. Morgenstern's opinion about whether FedEx breached the ELOCs is a matter about which he has no expertise" (Id. at 7), and as a result, "such opinion would invade the province of the Court and/or jury in determining a legal question" (Id. at 3). However, Plaintiffs acknowledge that "[w]hile Mr. Morgenstern may . . . testify about his opinions about the damages in this case, he cannot make conclusions about the ultimate issue of whether FedEx breached the ELOCs by failing to send [thirty] days written notice before terminating Plaintiffs." (Id. at 6).

Plaintiffs correctly point out that Mr. Morgenstern is not an attorney and should not be permitted to testify

regarding legal conclusions. However, FedEx responds that "Mr. Morgenstern is not attesting to a legal duty or the legal implications of conduct" (Doc. # 168 at 7), "but rather, an opinion that Dr. Lee's mileage estimate is unsupported by the ELOCs or any other evidence" (Id. at 6). Accordingly, Plaintiffs' concerns regarding the propriety of Mr. Morgenstern's offering legal opinions are moot. Nonetheless, in the instance that Mr. Morgenstern attempts to provide the jury with testimony that exceeds the bounds of his expertise, Plaintiffs are free to raise an appropriate objection during trial.

### C. **Testimony and Expert Report of Dr. Albert Lee**

Dr. Albert Lee – an expert for Plaintiffs - issued an expert report on August 1, 2013, and was deposed on October 24, 2013. (Doc. # 157 at 4). Dr. Lee's report calculated the "economic impact" to Plaintiffs and the purported class arising from FedEx's alleged material breach using a "simple and straightforward methodology that took into consideration the varying documented operations histories for each individual truck." (Doc. # 165 at 3).

To create his report,

> Dr. Lee reviewed and analyzed the settlement sheets
> for two hundred and twenty-eight putative class

members, which contained information on the miles
driven, the applicable rates and the charges
against any gross tip earnings. Based on the
settlement sheet data, Dr. Lee designed an
econometric model to calculate the number of miles
that the class would have driven but for FedEx's
termination. Next, Dr. Lee converted the total
miles driven into class-wide dollar figures based
on a historical ratio of net earnings to miles
driven specific to each contractor.

(Id.).

FedEx seeks to exclude the testimony and expert report
of Dr. Lee as it alleges "(i) the majority of Dr. Lee's
testimony is not reliable; and (ii) Dr. Lee's testimony does
not assist the trier of fact with the issues in dispute,
specifically the calculation of the alleged damages." (Doc.
# 157 at 1). According to FedEx, Dr. Lee's economic model is
only an estimation of "economic impact" on the purported class
of contractors without consideration of their costs and
expenses. (Id.).

In their response, however, Plaintiffs indicate that "It
is an open question whether Dr. Lee's class wide opinions
will even be useful in this case since the Court has denied
Plaintiffs' second motion for class certification. However,
Plaintiffs have petitioned the Eleventh Circuit for review
under Rule 23(f)." (Doc. # 165 at 9, n.3)(internal citation

omitted). The Court notes that on April 1, 2014, the Eleventh Circuit denied Plaintiffs' petition for review of this Court's denial of Plaintiffs' second motion for class certification stating, "Taking into consideration the five factors which serve as guideposts to the exercise of our discretion in considering whether to accept a Federal Rule of Civil Procedure 23(f) appeal, the petition is DENIED." (Doc. # 170).

In light of the Eleventh Circuit's recent Order, this Court is not convinced that Dr. Lee's testimony would be helpful at this time, as it relates to an econometric model based on a class-wide calculation. Therefore, at this juncture, this Court will not utilize scarce judicial resources in determining whether Dr. Lee's methodologies satisfy the requirements of Fed. R. Evid. 702 and Daubert. Instead, as Dr. Lee's testimony could be relevant, this Court denies the Motion without prejudice. If helpful to Plaintiffs' position, given the present posture of the case, Plaintiffs may provide the testimony at trial. However, Dr. Lee's testimony will be subject to the Court's determination that it is based on reliable methodologies, not unduly prejudicial to FedEx or prone to jury confusion as class certification has been denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant FedEx National, LTL, Inc.'s Motion in Limine to Exclude the Testimony and Expert Report of Marcie D. Bour (Doc. # 94) is **DENIED**.

(2)   Plaintiffs Britt Green Trucking, Inc. and Donna Isham, Administratrix of the Estate of Lanny D. Whitson's Motion Under <u>Daubert</u> to Exclude the Expert Opinions of FedEx's Expert Lloyd J. Morgenstern, or in the alternative, Plaintiffs' Motion in Limine to Strike Certain Portions of Lloyd J. Morgenstern's Expert Report (Doc. # 154) is **DENIED as moot**.

(3)   Defendant FedEx National, LTL, Inc.'s <u>Daubert</u> Motion to Exclude the Testimony and Expert Report of Dr. Albert Lee (Doc. # 157) is **DENIED without prejudice**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida this <u>24th</u> day of June, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record