UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRITT GREEN TRUCKING, INC.
and Donna Isham, Administratrix
of the Estate of Lanny D.
Whitson,

       Plaintiffs,

v.                         Case No. 8:09-cv-445-T-33TBM

FEDEX NATIONAL, LTL, INC.,

       Defendant.

_____/

**ORDER**

     Now before the Court is Plaintiffs Britt Green Trucking, Inc. and Donna Isham, Administratrix of the Estate of Lanny D. Whitson's[1] Motion for Partial Summary Judgment (Doc. # 153), filed on November 12, 2013, and Defendant FedEx National LTL, Inc.'s Second Motion for Summary Judgment (Doc. # 158), filed on November 15, 2013. Both Motions are ripe for this Court's review. Upon due consideration and for the reasons that follow, both Motions are denied and FedEx's request for oral argument on its Motion is further denied.

**I.   Factual Background**

---

[1]   On November 18, 2013, Plaintiffs filed a suggestion of death as to Lanny D. Whitson. (Doc. # 159). Upon the filing of an unopposed motion for substitution of party (Doc. # 160), this Court substituted Donna Isham, Administratrix of the Estate of Lanny D. Whitson for Lanny D. Whitson (Doc. # 161).

In August of 2006, FedEx took control of Watkins Motor Lines, an interstate motor carrier based in Lakeland, Florida, which employed individuals and trucking companies as independent contractors ("ICs"). (Doc. # 153 at 3-4; Doc. # 158 at 5). Watkins used both employees and ICs to provide local pickup and delivery service at service centers in several states across the country and to provide line haul service to move freight from one service center to another across the country. (Doc. # 158 at 5).

FedEx's acquisition of Watkins closed on September 3, 2006. (Id.). "Immediately after the Watkins acquisition," FedEx entered into Equipment Lease and Operating Contracts ("ELOCs") with ICs, including Plaintiffs, in various locations throughout the United States. (Doc. # 153 at 4; Doc. # 153-1; Doc. # 153-2; Doc. # 158 at 5). The ELOCs were drafted by FedEx. (Doc. # 153 at 5).

The ELOCs described both the manner in which FedEx would lease transportation equipment from ICs and the manner in which ICs would provide transportation services. (See Doc. # 153-1; Doc. # 153-2). The ELOCs provided as follows:

> [FedEx] desires to lease, on an as-needed basis, transportation equipment it does not own from [IC] and desires that [IC] provide transportation

> services, as needed, for the transportation of
> certain commodities provided by [FedEx] or its
> customers; and [IC] desires to contract with
> [FedEx] to transport such commodities.

(Id. at 1).  The ELOCs further stated:

> [FedEx] agrees to make commodities available to
> [IC] for shipment, from time to time, although this
> shall not be construed as an agreement by [FedEx]
> to furnish any specific number or types of loads or
> units, pounds, gallons, or any other measurements
> of weight or volume, quantity, kind or amount of
> freight, for transport by [IC] at any particular
> time or place.

(Id. at ¶ 2).

The ELOCs ran until July 31, 2007, and were subject to
automatic annual renewal thereafter unless terminated by
either party. (Doc. # 153 at 5; Doc. # 153-1 at ¶ 15(a); Doc.
# 153-2 at ¶ 15(a); Doc. # 153-3 at 105-06). As to
termination, the ELOCs provided:

> Either Party may terminate this Operating Contract
> (1) at any time, without cause, by giving written
> notice [to] the other Party at least thirty (30)
> days prior to the effective termination date or (2)
> immediately and at any time, by giving written
> notice to the other Party in the event of a material
> breach of any provision of this Operating Contract
> by such other Party.

(Doc. # 153-1 at ¶ 15(a); Doc. # 153-2 at ¶ 15(a)). Therefore,
"According to the ELOCs, if a written notice was not sent at

3

least thirty days prior to termination, the contract would continue in full effect." (Doc. # 153 at 7; Doc. # 153-3 at 11). FedEx concedes that the 2006 ELOCs contained a thirty-day written notice requirement. (Doc. # 158 at 6).

The ELOCs also leased equipment that was described in one or more Exhibit A's to the ELOCs, titled "Receipt of Equipment." (Id. at 7). The Receipt provided written acknowledgement of the date when FedEx took receipt of the equipment, and the bottom half of the Receipt served as the written notice terminating the lease of that piece of equipment. (Id.). Therefore, "[o]nce an [IC] signed the bottom half of the Receipt acknowledging termination and receipt of Equipment, and the [IC] then had no other Equipment leased to FedEx, the ELOC was considered cancelled." (Id. at 7-8).

According to Plaintiffs, in 2007, FedEx "suddenly and unilaterally" terminated Plaintiffs' ELOCs by immediately cutting off all hauling work to ICs. (Doc. # 153 at 6). Plaintiffs submit that "[t]his occurred without any written notice to the Plaintiffs, let alone the thirty days' written notice required under the ELOCs, and well before the July 31, 2007[,] expiration date." (Id.).

FedEx, on the other hand, contends that after the Watkins acquisition "freight levels began dropping." (Doc. # 158 at 8). "As a result, the amount of excess line haul freight needed to be moved by [ICs] began diminishing." (Id.). Therefore, "in February 2007, Cory Thompson, Line Haul Manager for the Orlando service center, informed the Orlando [ICs] that it appeared FedEx may not have loads to offer the Orlando [ICs] on a regular basis; however, FedEx was not terminating the ELOCs." (Id.). Thereafter, in February of 2007, Whitson cancelled his ELOC with FedEx by signing the Receipt acknowledging receipt and termination of each piece of equipment he had previously leased to FedEx. (Doc. # 158 at 8; Doc. # 137-4 at ¶¶ 19-21). Furthermore, after discussions with Cory Thompson, Green found "alternative work" and turned in his FedEx termination paperwork. (Doc. # 158 at 10). The parties disagree, however, as to whether FedEx had already breached the ELOCs by its failure to provide the requisite thirty days' written notice of termination to Plaintiffs prior to Plaintiffs submitting their termination paperwork.

## II.  Procedural Background

This action arises from FedEx's alleged termination of Plaintiffs' ELOCs without the required written notice of

termination. On November 19, 2008, Plaintiffs filed their class action complaint against FedEx (Doc. # 1), and filed an amended class action complaint on March 15, 2010, setting forth the following counts: (1) Breach of Contract; (2) Breach of the Duty of Good Faith and Fair Dealing; and (3) Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. (Doc. # 48).

Plaintiffs filed a motion for class certification on March 12, 2010. (Doc. # 46). On March 29, 2011, this Court denied Plaintiffs' motion for class certification finding that Plaintiffs failed to meet the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) and the predominance requirement of 23(b)(3). (Doc. # 60). Thereafter, the Court granted FedEx's motion for summary judgment, and judgment was entered in favor of FedEx. (Doc. ## 98, 99).

On February 28, 2013, the Eleventh Circuit reversed this Court's Orders granting summary judgment in favor of FedEx and denying class certification and remanded the case for further review. (Doc. # 116).

Thereafter, Plaintiffs filed a second motion for class certification (Doc. # 134) on July 15, 2013, requesting certification of the following class:

> All persons and entities throughout the United States operating as independent contractors (ICs) with Equipment Lease and Operating Contracts (ELOCs) who contracted to carry freight for FedEx National LTL, Inc. (FedEx) and whose ELOCs were terminated by FedEx without 30 days' written notice.

(Id. at 2).

Plaintiffs filed their Motion for Partial Summary Judgment on November 12, 2013. (Doc. # 153). Thereafter, FedEx filed its Second Motion for Summary Judgment on November 15, 2013. (Doc. # 158). Also on November 15, 2013, this Court denied Plaintiffs' second motion for class certification. (Doc. # 155). Subsequently, on December 3, 2013, Plaintiffs filed a motion for a stay pending the outcome of Plaintiffs' Fed. R. Civ. P. 23(f) appeal to the United States of Appeals for the Eleventh Circuit (Doc. # 164), which this Court granted on December 23, 2013 (Doc. # 169).

On April 1, 2014, the Eleventh Circuit issued an Order denying Plaintiffs' petition for leave to appeal pursuant to Fed. R. Civ. P. 23(f). (Doc. # 170). In light of the Eleventh Circuit's Order, this Court lifted the stay of this action on April 2, 2014, and returned the case to active status. (Doc. # 171).  At this juncture, the Court determines that it has jurisdiction to rule on the pending Motions (Doc. ## 153,

158), which are ripe for this Court's review. The Court has reviewed the Motions, the responses thereto, and the timely filed replies, and is otherwise fully advised in the premises.

### III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256,

1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034

(11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## IV.  Motions for Summary Judgment

Plaintiffs move for partial summary judgment on the issue of liability as to Count I of their amended complaint. Specifically, Plaintiffs posit that the undisputed facts establish that FedEx's failure to provide the requisite thirty days' notice prior to terminating the ELOCs equates to a material breach of the ELOCs. FedEx's Motion requests this Court enter summary judgment in its favor on all Plaintiffs' Counts. This Court will address each Motion in turn.

### A. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs' Motion for Partial Summary Judgment moves this Court to find FedEx liable on Plaintiffs' breach of contract claim (Count I). Under Florida law, a cause of action for breach of contract has three elements: "(1) a valid contract, (2) a material breach, and (3) damages." Havens v. Coast Fla., P.A., 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)(citing Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)).

Plaintiffs seek a finding that FedEx's "unilateral and simultaneous" termination of the ELOCs – by withdrawing all hauling work to the ICs – without the required written notice constituted a material breach thereof. According to

10

Plaintiffs, a breach of the ELOCs "undoubtedly occurred" because FedEx admitted that it failed to send Plaintiffs thirty days' written notice of termination of the ELOCs when it withdrew all hauling work in 2007. (Doc. # 153 at 8-9).

Plaintiffs posit that:

> When FedEx failed to send written notice of termination prior to cutting off work, the Plaintiffs were immediately and completely deprived of the benefit of hauling for FedEx and were forced to find substitute work with no advance notice. FedEx's actions were a complete termination and thus, a material breach.

(Id. at 10).

However, FedEx contends that no breach occurred despite the lack of written notices because Plaintiffs voluntarily terminated their own respective ELOCs in March of 2007 – by executing the Receipt of Equipment attached to their ELOCs – and sought alternative work. (Doc. # 167 at 3). Thus, FedEx claims that this action constitutes a termination by Plaintiffs, not FedEx, and a written waiver of the thirty-day written notice requirement. (Doc. # 158 at 13). Plaintiffs contest FedEx's position and argue that they could not have terminated the ELOCs themselves in March of 2007, as FedEx already terminated the ELOCs weeks earlier in February of

2007, by withdrawing all hauling work and failing to send the required written notice. (Doc. # 181 at 3).

Furthermore, FedEx argues that even if Plaintiffs could establish a breach, they would be unable to show that FedEx's failure to give thirty days' written notice was a material breach. (Doc. # 167 at 5). This is because FedEx suggests that the ELOCs did not obligate FedEx to offer any work to Plaintiffs during the thirty-day notice period, and therefore, Plaintiffs could not expect such a benefit. (Doc. # 167 at 6; see Doc. # 153-1; Doc. # 153-2); Covelli Family, LP v. ABG5, L.L.C., 977 So. 2d 749, 752 (Fla. 4th DCA 2008)("A party's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach."). Thus, FedEx contends that the alleged failure to provide the requisite notice "was not material but, at best, a merely technical breach, and cannot support a claim for breach of contract." (Doc. # 167 at 6).

Contract interpretation is generally a question of law for the court, rather than a question of fact. Langford v. Paravant, Inc., 912 So. 2d 359, 360 (Fla. 5th DCA 2005). "Unless ambiguous, contract language must be given its plain meaning." Id. (citing Beans v. Chohonis, 740 So. 2d 65, 67 (Fla. 3d DCA 1999)). "However, when the content of an

12

agreement is ambiguous and the parties present different interpretations, the issue of proper interpretation becomes one of fact, precluding summary judgment." Langford, 912 So. 2d at 361.

The specific contractual provisions at issue state as follows:

> [FedEx] agrees to make commodities available to [IC] for shipment, from time to time, although this shall not be construed as an agreement by [FedEx] to furnish any specific number or types of loads or units, pounds, gallons, or any other measurements of weight or volume, quantity, kind or amount of freight, for transport by [IC] at any particular time or place.
>
> * * *
>
> Either Party may terminate this Operating Contract (1) at any time, without cause, by giving written notice [to] the other Party at least thirty (30) days prior to the effective termination date or (2) immediately and at any time, by giving written notice to the other Party in the event of a material breach of any provision of this Operating Contract by such other Party.

(See Doc. # 153-1; Doc. # 153-2). The parties dispute whether these provisions require FedEx to provide Plaintiffs written notice prior to terminating the ELOCs. FedEx contends that the ELCOS allow FedEx to withdraw all hauling work without terminating the ELOCs, and therefore, under the present

circumstances, FedEx was not required to provide thirty days' written notice of termination. Conversely, Plaintiffs submit that FedEx was obligated to give thirty days' written notice before withdrawing all hauling work, which was effectively a termination of the ELOCs.

After considering the parties' respective positions, the Court finds that the meaning and interplay of the above referenced provisions with the remaining provisions of the ELOCs is uncertain and fairly susceptible to more than one meaning. Therefore, this Court finds that an ambiguity exists in the relevant ELOCs, and as a result, this Court declines to grant summary judgment as to the issue of liability as to Count I as requested by Plaintiffs.

Furthermore, the Court notes that to constitute a material breach, a party's nonperformance must "go to the essence of the contract." Covelli, 977 So. 2d at 752 (citing Beefy Trail, Inc. v. Beefy King Int'l, Inc., 267 So. 2d 853, 857 (Fla. 4th DCA 1972)). Failure to perform some minor part of a contractual duty cannot be classified as a vital or material breach. Id. A material breach occurs only when an injured party has sustained a substantial injury due to the breach. Malladi v. Brown, 987 F. Supp. 893 (M.D. Ala. 1997). Whether or not an alleged breach is material is a question of

14

fact to be resolved by the trier of fact. Id.; Covelli, 977 So. 2d at 752 ("The issue of whether an alleged breach is vital or material is reviewed as a question of fact."); Moore v. Chodorow, 925 So. 2d 457, 461 (Fla. 4th DCA 2006)("Whether a party's failure to commit certain actions constitutes a material breach of an agreement is reviewed as a question of fact.").

Accordingly, the Court finds that a genuine issue of fact remains as to whether FedEx breached the ELOCs when it failed to provide the thirty days' written notice of termination, and whether that breach – if at all – was material. Thus, Plaintiffs' Motion for Partial Summary Judgment is denied.

### B. **FedEx's Second Motion for Summary Judgment**

FedEx moves this Court to grant summary judgment in its favor as to all of Plaintiffs' claims. The Court will address the appropriateness of summary judgment as to each Count of Plaintiffs' amended complaint in turn.

### 1. **Count I: Breach of Contract**

As previously stated, under Florida law, in order for a plaintiff to satisfy a breach of contract claim, the plaintiff must establish: (1) a valid contract, (2) a material breach,

and (3) damages. <u>Havens</u>, 117 So. 3d at 1181. FedEx does not dispute that the ELOCs in question are valid contracts. (<u>See</u> Doc. # 116)(Eleventh Circuit finding that the ELOCs are enforceable contracts).

Furthermore, this Court has previously determined that the issue of whether FedEx's failure to provide the requisite thirty days' notice to Plaintiffs prior to termination constituted a material breach of the ELOCs is a question of fact for the jury. To the extent FedEx argues that "even if the alleged breach was material, the undisputed facts demonstrate that Plaintiffs waived the thirty day notice provision by executing the [R]eceipts" (Doc. # 178 at 5), this Court finds that Plaintiffs have provided sufficient conflicting evidence establishing that a genuine issue of material fact exists to rebut the affirmative defense of waiver. <u>See</u> <u>Knight Energy Servs., Inc. v. Amoco Oil Co.</u>, 660 So. 2d 786, 788 (Fla. 4th DCA 1995)(explaining that a plaintiff "must either factually refute the alleged affirmative defenses or establish that they are legally insufficient to defeat summary judgment.").

Specifically, Plaintiffs submit that they could not have "waived" the thirty-day notice requirement, as submitted by FedEx, as FedEx's alleged breach of the ELOCs – failure to

16

provide thirty days' written notice – already occurred when the Receipts of Equipment were executed by Plaintiffs. (Doc. # 181 at 3). Within their Reply, Plaintiffs explain:

> Plaintiffs' obligations under the ELOCs were discharged as soon as FedEx withdrew work without notice in February 2007. Once FedEx terminated by withdrawing work and breached by failing to give proper notice, Plaintiffs were "entitled to treat [their] obligations under the existing contracts as discharged and sue for damages occasioned by the breach."

(Id. at 6). The Court accordingly declines to grant summary judgment in favor of FedEx based on the affirmative defense of waiver.

However, FedEx posits that Plaintiffs are unable to establish the element of damages necessary to support their breach of contract claim. (Doc. # 158 at 16). Namely, FedEx argues that (1) Plaintiffs cannot establish damages for early termination because FedEx was not required to offer any minimum amount of work to Plaintiffs; (2) Plaintiffs cannot seek damages beyond the thirty-day notice period; and (3) Plaintiffs cannot seek consequential damages, such as lost profits, without carrying their burden of proof as to both the lost revenue and the avoided costs and expenses. (Id. at 16-17).

## A. <u>Damages for Alleged Early Termination</u>

FedEx argues that Plaintiffs would be unable to demonstrate that they suffered the requisite damages arising from the alleged breach. (<u>Id.</u> at 16). Specifically, FedEx explains that pursuant to the ELOCs it was not required to provide any opportunities for work during the alleged early termination period, and as a result, Plaintiffs did not suffer any losses from the shorter termination periods they have alleged. (<u>Id.</u>; <u>see</u> Doc. # 153-1; Doc. # 153-2).

Plaintiffs argue, however, that they were damaged by FedEx's failure to provide thirty days' written notice in advance of terminating their ELOCs. (Doc. # 166 at 12). In support of this contention, Plaintiffs provide that they have expert reports, authored by Dr. Albert Lee and Marcie Bour, enumerating Plaintiffs' damages on both a class wide and individual basis. (<u>Id.</u> at 13; Doc. # 165-5). Therefore, Plaintiffs suggest that they have produced sufficient evidence to create a jury question regarding damages and, accordingly, FedEx's Motion must be denied.

Furthermore, Plaintiffs suggest that FedEx's argument is just an "end run around the Eleventh Circuit's opinion." (Doc. # 166 at 13). Namely, "[FedEx's] arguments that the ELOCs did

not obligate FedEx to do anything and that FedEx could withdraw hauling work without 'terminating' the ELOCs are merely another way of saying the ELOCs were illusory and unenforceable," which was rejected by the Eleventh Circuit. (Id.).

Florida law establishes relatively liberal standards for proving damages. Ritchie v. Harrison, No. CIV.A.3:03CV14-1, 2006 WL 826761, at *3 (M.D. Ga. Mar. 28, 2006). When the value of an item of damages is uncertain or difficult to prove, that uncertainty alone does not preclude recovery. Id. (citing G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1538 (11th Cir. 1985)("'[U]ncertainty cannot end the efforts of the federal courts to redress . . . [harm].'") (quoting Lehrman v. Gulf Oil Corp., 464 F.2d 26, 45 (5th Cir. 1972))). Instead, because "[t]he wrongdoer must bear the risk of the uncertainty," it is enough if "the evidence show[s] the extent of the damages as a matter of just and reasonable inference." G.M. Brod & Co., 759 F.2d at 1538-39. The proof offered may be indirect and may be based on estimates and assumptions, as long as those assumptions rest on adequate data. Id. at 1539. Thus, under Florida law, a plaintiff's proof of damages will be sufficient as long as he provides some evidence by reference to which the amount of damages may

be satisfactorily ascertained. <u>Harrison</u>, 2006 WL 826761, at *3.

Upon consideration, this Court finds that Plaintiffs have provided sufficient evidence on the issue of actual damages through the use of expert reports and testimony to survive a summary judgment motion. As there are disputed issues of material fact as to the amount of damages, if any, to which Plaintiffs are entitled, summary judgment is denied on this issue.

B. **Damages Beyond the Thirty-Day Notice Period**

According to FedEx, Plaintiffs seek damages from three separate time periods: (1) the thirty-day written notice period; (2) the remainder of the contract term; and (3) the remainder of the contract term, plus one year. (Doc. # 158 at 16-17). However, FedEx argues that Plaintiffs may not seek damages beyond the thirty-day notice period. (<u>Id.</u> at 17).

Conversely, Plaintiffs suggest that "For contracts that contain automatic renewal clauses, like the ELOCs, Florida law states that the failure to send the required written notice of termination can trigger the automatic renewal clause, meaning that the contract remains in full force and effect." (Doc. # 166 at 16)(citing <u>Flagship Resort Dev., Corp.</u>

v. Interval Int'l, Inc., 28 So. 3d 915, 923 (Fla. 3d DCA 2010)
(finding the plaintiff failed to provide defendant notice of
its intent not to renew, and therefore, the contract did not
expire by its terms); Kimberly Scheider Hepler v. Atlas Mut.
Ins. Co., 501 So. 2d 681, 688-89 (finding that the contract
did not expire on its terms and the automatic renewal
provision was triggered when party failed to send written
notice of non-renewal)). Therefore, according to Plaintiffs,
as FedEx concedes there was an automatic renewal provision,
"the ELOCs were enforceable against FedEx beyond the thirty
day notice period because FedEx failed to send written notice
of termination." (Doc. # 166 at 17).

The goal of an award of damages in a breach of contract
action is "to restore the injured party to the condition which
he would have been in had the contract been performed."
Campbell v. Rawls, 381 So. 2d 744, 746 (Fla. 1st DCA 1980).
A party can neither receive more than it bargained for nor
should it be put in a better position than it would have been
in had the contract been properly performed. Id. Therefore,
according to FedEx, parties who agree that a contract may be
terminated for any reason, or no reason, upon the giving of
the specified notice cannot reasonably anticipate that
damages would exceed that notice period. (Doc. # 158 at

21

17)(citing <u>Mousa v. Lauda Air Luftfahrt, A.G.</u>, 258 F. Supp. 2d 1329, 1346 (S.D. Fla. 2003)("damages recoverable for breach of an employment contract terminable at will upon the giving of notice of a specific length of time are limited to the salary that would have been earned during the notice period.").

Here, it is undisputed that the ELOCs contained a thirty-day notice period. However, FedEx admits that the ELOCs contained an automatic renewal provision, and that absent written notice of termination, the ELOCs automatically renewed. Therefore, this Court finds that a question remains as to whether the automatic renewal provision was triggered under the present circumstances, and as a result, whether Plaintiffs could obtain damages outside the notice period. Thus, this Court declines to grant summary judgment on this issue.

C. **Consequential Damages**

According to FedEx, "the law requires Plaintiffs to bear the burden of establishing their damages figure, which includes the burden of proving their avoided costs, not just their lost revenue." (Doc. # 158 at 18)(citing <u>Lipscher v. LRP Publ'ns, Inc.</u>, 266 F.3d 1305, 1317 (11th Cir. 2001)("Under

Florida law, in order to recover lost future profits, a party must prove income and expenses of the business for a reasonable time prior to the alleged breach. If the party presents evidence only of gross receipts or fails to prove expenses with some specificity, an award of damages cannot stand.")(internal quotation omitted)). FedEx argues that any lost profits analysis provided by Plaintiffs is speculative because FedEx was entitled to terminate the ELOCs. (Doc. # 158 at 18)(citing Paul Gottlieb & Co., Inc. v. Alps S. Corp., 985 So. 2d 1, 9 (Fla. 2d DCA 2007)(holding that the award of lost profits was error because amount was based on mere speculation as it did not account for costs associated with production)).

Plaintiffs posit, however, that they have sustained their burden as their damages calculations stem from the costs reflected in the settlement sheets, and to the extent that costs for fuel, tolls, insurance, and taxes were shown in the settlement sheets, they were accounted for by Plaintiffs' economic expert Dr. Albert Lee. (Doc. # 165-5; Doc. # 166 at 18). Further, Plaintiffs explain that to the extent expenses were not reflected in the settlement sheets, "[FedEx] fails to point to any evidence in the record that any [ICs] actually stopped paying for their insurance, taxes, or driver salaries

23

after they were terminated by FedEx." (Doc. # 166 at 18). In fact, Plaintiffs contend that the opposite occurred – Green testified that he continued to pay driver salaries, payroll taxes, and insurance until he was able to secure replacement work. (Id.; Doc. # 153-5 at 34-35). Therefore, Plaintiffs suggest that they have sustained their burden, and the question as to the amount of damages is a question for the jury. (Doc. # 166 at 18).

Upon consideration, the Court finds that Plaintiffs have provided sufficient evidence on the issue of damages through expert reports and testimony of Marcie Bour and Dr. Albert Lee to survive a summary judgment motion. To what extent, if at all, Plaintiffs are to be awarded consequential damages is a question for the jury to decide, based on their determination of the weight to give the testimony of each expert. Thus, FedEx's Motion as to the issue of damages is denied.

Consequently, for the reasons stated above, FedEx's Motion on Count I is denied.

## 2. Count II: Breach of Covenant of Good Faith & Fair Dealing

FedEx suggests that Count II fails as a matter of law because Plaintiffs admit that they voluntarily terminated

their ELOCs and FedEx was not obligated to provide any amount of work to Plaintiffs during the notice period to which the covenant could attach. (Doc. # 158 at 22)(citing <u>Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.</u>, 162 F.3d 1290, 1314 (11th Cir. 1998)(reasoning that the covenant of good faith and fair dealing attaches only to the performance of a specific contractual obligation; and therefore, where there is no duty, there is no duty to perform in good faith); <u>Snow v. Roden</u>, 896 So. 2d 787, 792 (Fla. 2nd DCA 2005)(holding that the claim for breach of covenant of good faith and fair dealing was properly dismissed where the claim failed to link the implied covenant to a breach of an express provision of the contract, and therefore, failed to state a cause of action)).

Furthermore, FedEx argues that even if the ELOCs did create an enforceable obligation to which the covenant could attach, Plaintiffs' claim would still fail as Plaintiffs cannot demonstrate that FedEx breached the covenant. (Doc. # 158 at 23). Specifically, FedEx submits that "[I]f FedEx was obligated to provide [work to the ICs in FedEx's] discretion, then that discretion as to the amount of work would have to be exercised in good faith to avoid thwarting the intentions of the parties." (<u>Id.</u>). According to FedEx, "[e]ven under

that scenario, to prevail, Plaintiffs would be required to prove that no reasonable party in FedEx's position would have made the same discretionary decision." (Id.). However, "Plaintiffs' own testimony shows that any such discretionary decision would have been reasonable, as a result of a slowdown in business of FedEx." (Id. at 23-24).

Conversely, Plaintiffs argue that FedEx:

Recruit[ed] the Plaintiffs . . . into [ELOCs] which were intended to last until at least July 31, 2007, which were automatically renewable, and which called for mandatory, written [thirty] days' notice of termination, and then unilaterally disregard[ed] that provision entirely, without providing any written notice and without providing anywhere near the 30 days' notice under the [ELOCs].

[FedEx's] [f]ailure to abide by the terms of the [ELOCs] by terminating the business relations between itself and the Plaintiffs . . . , by informing them that they could continue to incur the charges and expenses attendant to the [ELOCs] but would not be provided with any further work under the [ELOCs] constitutes a clear breach of the duty of good faith and fair dealing, and renders FedEx liable to Plaintiffs. . . .

(Doc. # 48 at ¶¶ 32-33).

Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract. Cnty. of Brevard v. Miorelli Eng'g, Inc., 703 So. 2d 1049, 1050 (Fla. 1997)("[E]very contract includes an implied covenant that the

26

parties will perform in good faith."). "[G]ood faith means honesty, in fact, in the conduct of contractual relations." Harrison Land Dev., Inc. v. R & H Holding Co., Inc., 518 So. 2d 353, 355 (Fla. 4th DCA 1988). However, where not related to the performance of an express term of the contract, such an action cannot be maintained. Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So. 2d 573 (Fla. 4th DCA 1998)(finding that "a duty of good faith must relate to the performance of an express term of the contract.").

Here, Plaintiffs have presented an express contractual provision that FedEx allegedly failed to comply with in good faith:

> Either Party may terminate this Operating Contract (1) at any time, without cause, by giving written notice [to] the other Party at least thirty (30) days prior to the effective termination date or (2) immediately and at any time, by giving written notice to the other Party in the event of a material breach of any provision of this Operating Contract by such other Party.

(Doc. # 153-1 at ¶ 15(a); Doc. # 153-2 at ¶ 15(a)).

FedEx concedes that it failed to provide thirty days' notice to Plaintiffs; however, FedEx argues that it was not required to do so as Plaintiffs voluntarily terminated their own ELOCS, which voided the thirty-day notice requirement.

27

Conversely, Plaintiffs contend that the ELOCs required written notice prior to termination, and that FedEx effectively terminated the ELOCs by withdrawing all hauling work. Therefore, what remains is a determination of whether FedEx was required to provide thirty days' written notice to Plaintiffs, and if so, whether FedEx acted in good faith in its performance of the contractual provision. This is a determination for the jury, and as a result, FedEx's Motion as to Count II is denied.

### 3. **Count III: FDUTPA**

A claim pursuant to FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Rollins, 951 So. 2d at 869. A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Id.(internal citation and quotations omitted).

FedEx argues that Plaintiffs' FDUTPA claim must fail as Plaintiffs cannot show actual damages, a required element of a FDUTPA claim. (Doc. # 158 at 19). Specifically, FedEx states that "Even if Plaintiffs could establish lost profits . . .

then Plaintiffs' FDUTPA claim would still fail because Plaintiffs cannot use any such consequential damages to establish 'actual' damages." (Id.). Furthermore, FedEx suggests that Plaintiffs' FDUTPA claim, as well as their Breach of Covenant of Good Faith and Fair Dealing claim, is preempted by federal law – the Federal Aviation Administration Authorization Act, 49 U.S.C. §§ 14501(c) and 41713(b). (Id. at 20).

### a. Requisite Damages

FedEx argues that the ELOCs do not obligate FedEx to offer any number of loads to Plaintiffs and they do not obligate Plaintiffs to accept any offers from FedEx. (Id. at 19). "Thus, even if this Court were to find that a termination with less than thirty days' written notice occurred, FedEx submits that Plaintiffs' FDUTPA claim would still fail as Plaintiffs could not show that damages resulted from that alleged breach as the parties were not obligated to perform any services during that thirty-day period." (Id.). Moreover, FedEx argues that Plaintiffs appear to be seeking lost profits damages, which are a form of consequential damages that cannot be recovered as "actual" damages under FDUTPA. (Id. at 20).

In order to state a FDUTPA claim for damages "a plaintiff must show not only that the conduct complained of was unfair, unconscionable, or deceptive, but also that it has suffered actual damages proximately caused by the unlawful conduct." Hanson Hams, Inc. v. HBH Franchise Co., LLC, No. 03–61198-CIV, 2004 WL 5470401, at *4 (S.D. Fla. Dec. 21, 2004). "Actual damages" under FDUTPA must directly flow from the alleged deceptive act or unfair practice. Hennegan Co. v. Arriola, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012). "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)(internal citation omitted); see Rollins, Inc., 951 So. 2d at 869-70 (stating that "[f]or purposes of recovery under FDUTPA, 'actual damages' do not include consequential damages").

Here, Plaintiffs suggest that they have established the damages element for their FDUTPA claim, through allegations of lost profits, which Plaintiffs contend are sufficient under Florida law. (Doc. # 166 at 18-19)(citing Pegasus Imaging Corp. v. Northrop Grumman Corp., No. 8:07-CV-1937-T-27EAJ, 2010 WL 4627721 (M.D. Fla. Nov. 5, 2010)(entering summary judgment for defendant where plaintiff had not

identified any evidence of lost profits, injury to its goodwill or reputation, expenses associated with preventing or remediating customer confusion, or any other damages)).

Under Florida law, a plaintiff's proof of damages will be sufficient as long as he provides some evidence by reference to which the amount of damages may be satisfactorily ascertained. Harrison, 2006 WL 826761, at *3. However, "it remains well settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA." Five for Entm't v. Rodriguez, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012); Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical, 235 F.3d 1344 (11th Cir. 2000)("While Plaintiffs seek to label future lost profits as 'actual damages,'. . . 'lost profits may indeed be the quintessential example of consequential damages.'").

Plaintiffs allege that as a result of FedEx's withdrawal of all hauling work during the requisite notice period, Plaintiffs suffered damages. Although Plaintiffs characterize the damages as "lost profits," the Court is unwilling to generalize that all damages sought constitute "lost profits," as that term is utilized by Plaintiffs. Therefore, at this

juncture, the Court denies summary judgment as to this issue. To the extent Plaintiffs fail to provide sufficient evidence of actual damages at trial, FedEx may re-assert its arguments at the appropriate time.

### b. Preemption

FedEx – for the first time – contends that Plaintiffs' FDUTPA and Breach of Covenant of Good Faith and Fair Dealing claims are preempted by Federal law; specifically the Federal Aviation Administration Authorization Act. (Doc. # 158 at 20; Doc. # 178 at 8-9)(citing Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422, 1433 (2014)(concluding that preemption applied to a claim for breach of the implied covenant of good faith and fair dealing)).

Plaintiffs take issue with FedEx's preemption argument as FedEx has failed to allege the affirmative defense of preemption at any time prior to the present Motion, and as a result, Plaintiffs argue that FedEx has waived its ability to do so. (Doc. # 166 at 20). Plaintiffs contend that if this Court were to allow FedEx to amend its answer, Plaintiffs would be prejudiced by the unnecessary delay. (Id.).

As a general rule, failure to plead an affirmative defense results in waiver of that defense. Latimer v. Roaring

32

Toyz, Inc., 601 F.3d 1224, 1239 (11th Cir. 2010); see Am.
Mar. Officers Union v. Merriken, 981 So. 2d 544, 547 (Fla.
4th DCA 2008)("Federal preemption is an affirmative defense.
. . ."). FedEx admits that it failed to raise the issue of
preemption at any stage of the proceeding prior to its present
Motion. Nonetheless, FedEx contends that as preemption is a
"purely legal defense," this defense will not require
discovery, and therefore, Plaintiffs would not be prejudiced
if this Court were to determine the preemption issue at this
juncture. (Doc. # 178 at 8).

      The Court disagrees. This case has been pending since
2008, and FedEx could have raised this affirmative defense at
any time prior to summary judgment. Instead, FedEx has waited
until the eleventh hour to bring this issue to the attention
of Plaintiffs and this Court. Allowing FedEx to amend its
answer, and the delay that would result, would prejudice
Plaintiffs and their ability to litigate this case in a timely
manner.

      Nonetheless, in an effort to have a fully developed
record, this Court has considered FedEx's preemption
affirmative defense and determines that FedEx has provided
insufficient support to demonstrate its applicability to this
action.

The FAAAA preempts state law relating to the services of interstate carriers and provides in pertinent part that:

> (1) Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a **price, route, or service** of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarded with respect to the transportation of property.

49 U.S.C. §§ 14501(c)(1) and 41713(b)(4)(emphasis added).

FedEx argues that the FAAAA preempts Plaintiffs FDUTPA and Breach of Covenant of Good Faith and Fair Dealing claims as the "transportation of property" is the very core of FedEx and Plaintiffs' business and because Plaintiffs argue that their damages are based on the revenue they allegedly lost from driving particular routes for FedEx, which is the service that both Plaintiffs and FedEx provide. (Doc. # 178 at 10).

To support its contention, FedEx cites Beyer v. Acme Truck Line, Inc., 802 So. 2d 798, 799-800 (La. Ct. App. 5th Cir. 2001). In Beyer, the plaintiffs were independent owners-operators of trucks, who provided trucking services to oil and oilfield service companies. Id. at 799. The plaintiffs brought a class action lawsuit alleging price fixing by the

defendants - trucking companies licensed by the United States Department of Transportation to provide motor carrier services through the United States. Id. The defendants filed a peremptory exception of no cause of action based on federal preemption, and the district court found that the state court suit was preempted by federal law. Id. at 800. On appeal, the Fifth Circuit affirmed the district court's determination as it found the plaintiffs' causes of action as stated were preempted by 49 U.S.C. § 14501(c)(1) – the FAAAA - which precludes the application of state laws relating to the "price, route or service" of common carriers, such as the plaintiffs (independent truckers). Id. at 801.

Here, unlike the defendants in Beyer, FedEx has failed to provide the necessary information to demonstrate the applicability of the preemption affirmative defense to this action. Namely, FedEx has failed to demonstrate how it falls into the category of a "State, political subdivision of a state, or political authority of 2 or more states" or how a law, regulation, or other provision enacted by one of the entities governs FedEx's business practices as it relates to the ELOCs. Furthermore, FedEx has failed to point to a specific law, regulation, or other provision having the force and effect of law related to a price, route, or service of

35

any motor carrier in which it must abide. Specifically, a law, regulation or provision regarding FedEx's ability to withdraw all hauling work without terminating the ELOCs. As FedEx has failed to provide the necessary information for this Court to conduct an appropriate inquiry and analysis on the preemption issue, at this time, this Court declines to do so.

To the extent FedEx intends to reassert this affirmative defense at trial, FedEx should be prepared to explain its applicability to this action and how Plaintiffs would not be prejudiced by the raising of this affirmative defense so late in the proceedings. For the reasons stated above, FedEx's Motion is denied as to Count III.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs Britt Green Trucking, Inc. and Donna Isham, Administratrix of the Estate of Lanny D. Whitson's Motion for Partial Summary Judgment (Doc. # 153) is **DENIED.**

(2) Defendant FedEx National LTL, Inc.'s Second Motion for Summary Judgment (Doc. # 158) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

<u>14th</u> day of July, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record